CLAYTON & KENNADY, plaintiffs in error, vs. FRANCIS O'CON-
NER, defendant in error.

Where one person sells a note to another, representing it to be good, and know-
ing it to be worthless, the purchaser, when he discovers the fraud, may re-
scind the trade by tendering back the note, and after doing so, is no longer
responsible for the use of proper means to collect the note.

Case, in Richmond Superior Court.    Decision by Judge
HOLT, at October Term, 1859.

This was an action on the case, brought by Clayton & Ken-
nady against Francis O'Conner, for falsely and fraudulently
negotiating and selling, for value received, to plaintiffs, a
promissory note on one John C. Carmichael, and represent-
ing that said Carmichael was solvent, and able to pay said
note, which representation was false—the said Carmichael,
at the time of said transfer, being insolvent, and utterly un-
able to pay said note, and which fact was well known to de-
fendant at the time.

The following is a copy of the note negotiated:

"AUGUSTA, Georgia, Oct. 8th, 1856.

$800.    Ninety days after date, I promise to pay to the or-
der of D. T. Smith, eight hundred dollars, at either bank in
this city, for value received.

(Signed)          JOHN C. CARMICHAEL.

Endorsed in blank, " D. T. SMITH."

*Evidence for Plaintiffs.*

*A. W. Walton* testified : That he lives with plaintiffs as
book-keeper. On the 4th December, 1856, defendant came
into plaintiffs' store between 12 o'clock, M., and 2 o'clock,
P. M., and offered to sell them a note on John C. Carmichael,
and payable to the order of one D. T. Smith, and endorsed
by Smith in blank, for $800 00; said note dated 8 Oct., 1856,
and payable ninety days after date.    After some conversa-

tion John J. Clayton, one of the plaintiffs, told witness to draw a check on the Mechanics Bank for $762 50. Clayton told defendant to endorse the note; defendant said that his name would make the note no better; that Carmichael was as good as any man in the city of Augusta, and would pay the note at maturity. Defendant took the check and left the store; witness and plaintiff learned a very short time afterwards, on the same day, that Carmichael had failed; defendant lives in South Carolina; plaintiffs sent to the bridge and elsewhere to intercept defendant before he got over the river, but did not find him; the check was paid by the Mechanics Bank; two or three days afterwards plaintiffs sent witness over to see defendant, who resides seven or eight miles in the country, to return him the note, or get his endorsement on it, or the money; witness offered to return the note to defendant and take back the money, or for defendant to endorse the note, but he would do neither; told defendant that Carmichael had failed when he passed the note to plaintiffs, and that it was worthless; defendant said he did not make child's bargains.

*Cross-Examined.*—The note was turned over to L. D. Lallerstedt, Esq., to be put in suit, and was in his hands at its maturity; witness did not call on Carmichael for payment; don't know whether he ever was called on; Carmichael failed two or three days before defendant sold the note to plaintiffs, but his failure was not generally known; witness nor plaintiffs did not know it until an hour or two after the trade; considers the note worthless; neither Smith, the endorser, nor Carmichael, responsible or solvent; Carmichael was in good credit up to the date of his failure, and did a large business; plaintiffs had dealt in paper with his endorsement, at a discount, before; had some on hand at that time, but it was subsequently arranged by the makers; witness heard John C. Kennady say he met defendant in the street that day before the trade was made.

*Charles J. Goodwin* testified: That he was a clerk in the

store of Lallerstedt & Deming, on the 4th day of December, 1856. On the morning of that day defendant, Francis O'Conner, came into said store and walked to the back where Mr. Lallerstedt was sitting, and offered to sell him a note on John C. Carmichael for eight hundred dollars; Mr. Lallerstedt told him that Carmichael had failed, and the note was worthless; after some conversation between them defendant left.

*Lawrence D. Lallerstedt* testified: That Francis O'Conner, the defendant, came into his store on the morning of the 4th day of December, 1856, and offered to sell him a note on John C. Carmichael, the note just put in evidence; witness told defendant, Carmichael had failed, and the note was worthless; defendant left and went down the street.

*Cross-Examined.*—Plaintiffs' counsel objected to the statement of any fact, or the answer to any question, the knowledge of which fact or answer was obtained by witness during the time, or by reason of the relation of client and attorney; which objection was overruled by the Court, and witness, the attorney in the case, required to answer the questions that elicited the following testimony, to all of which plaintiffs' counsel excepted: This note was placed in the hands of witness for collection, by Clayton & Kennady, some time subsequent to the day just mentioned; witness heard of the failure of John C. Carmichael two or three days before the defendant offered the note to him, on the 4th; his failure was not generally known; witness was a director in a bank, and had good opportunities for knowing the fact; witness knows of no payment made by Carmichael since his failure; he was in good credit previous to that time; did not present the note to Carmichael for payment; the note was due about the 9th of January afterwards. D. T. Smith was held to bail and attachments issued, and garnishments served on several persons, under the statute provided for such proceedings before the debt is due, where the debtor is about to leave the

State.* The Court, upon the trial, nonsuited the plaintiffs, upon the ground that D. T. Smith, as endorser, could not be sued in such an action; that he was not liable as endorser until the note matured, was put in bank, and regularly protested for non-payment. There was no property found upon which to levy the attachment, the garnishees answering that they had nothing in their hands belonging to D. T. Smith; Smith had a drug store in the city, and made a fine appearance of stock; little capital makes a large show in the drug business; witness called on Smith at his store about the last of December, (there was an auction there that day,) to get him to make some arrangements about the payment of the note; he declined doing any thing with it; witness knows of no debts paid by Smith before or since, except a horse that was taken back which had been sold to him; witness considered Smith worthless; Smith left for parts unknown about ten days before the maturity of the said note, and has not been here since; has no knowledge of his whereabouts; witness looked for Smith the day the note became due; found out then he had been gone about ten days; the note was not put in bank.

Plaintiffs proposed to show by the records of the Court, that Carmichael had taken the benefit of the honest debtors" Act. Defendant objected. The Court sustained the objection, and counsel for plaintiff excepted.

Plaintiffs here closed; and defendant moved for a nonsuit on the grounds:

1st. That the note of Carmichael never having been presented, there was no legal evidence or proof that it was valueless, or would not have been paid by him, if duly presented at maturity, or by Smith, the endorser, on due notice of non-payment by the maker.

---

*COMMENT BY JUDGE HOLT.—The witness is not correct in his recollection of the decisions of the Court in that case. The plaintiffs were compelled to take a nonsuit for want of evidence. The Court required, before it would admit the note in evidence, proof of demand for payment of the maker, and notice of refusal to the endorser, which proof could not be made.

2d. That plaintiffs have, by their neglect, discharged the endorser from all liability.

The presiding Judge, after argument, granted a nonsuit, and counsel for plaintiffs excepted, and assigns as error said decision.

L. D. LALLERSTEDT, for plaintiffs in error.

H. H. CUMMING; and JNO. B. CUMMING, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

This was an action for deceit, in the sale of a note to the plaintiffs by the defendant. The evidence was that the defendant traded the note to the plaintiffs, representing it to be perfectly good, just after he had been informed that it was worthless; that the plaintiffs, when they discovered the worthlessness of the note, within a few days, tendered it back to the defendant, and demanded a return of the money they had paid for it; and that the defendant refused to rescind the contract, not denying the worthlessness of the note when asserted to him by plaintiffs' agent, who tendered back the note to him, but simply saying that he did not make child's bargains. The Judge nonsuited the plaintiffs, upon the ground that they had not used the legal steps to collect the note. This ground rests, we think, upon an erroneous conception of the plaintiffs' rights and remedy. If the facts stated in evidence were *true,* the plaintiffs had a right to *rescind* the contract, without the consent of the defendant, on account of his fraud, and tendering the note back to him was the proper step to rescind it. After that, the contract was rescinded, and the money they had paid for the note belonged to the plaintiffs, and the *note belonged to the defendant;* and the plaintiffs were not bound to take legal steps to collect it, nor to do any thing at all with it. The defendant had no right to require them to look after or take care of his property, after he had it tendered to him. His refusal to accept

it did not affect their rights in the least, for they had a right to rescind without his consent. The Judge may have acted upon the idea that the legal steps for collecting the note were the only test of the goodness of the note at the time when it was traded, and that the plaintiffs having failed on that point, had failed to show, in the only possible mode of showing, the main fact ,on which their whole case rested—the fact that the note was not good when traded. Counsel declined to take this ground in the argument, but it may be as well to show that it is not maintainable. This ground assumes that a representation that a note is good, is equivalent to a warranty that it can be collected by the use of legal means. The assumption is not true. The debtor might be in possession of a large estate, be in full credit and free from all other debts at the time when the representation is made, and the representation therefore be perfectly true, and yet he might squander every thing at the gaming table or otherwise, before judgment could be obtained, or even before the maturity of the note. And so, while the representation might be perfectly true, it might turn out that the use of all legal means would prove inadequate to the collection of the note. So the reverse of this might happen. The representation might be false when made, and yet from unforeseen good luck, the debtor might subsequently acquire means and actually pay the note. The use of legal means to collect the note, therefore, so far from being the only test of the truth of the representation at the time when it was made, is no certain test at all. And this is so on one of the principles which led the Judge to rule out the plaintiffs' evidence of a judgment of insolvency, to show the fact of an insolvency at some time *before* the judgment. His Honor correctly. held, that the judgment showed only ;an insolvency, when the proceedings to obtain it were instituted, and not a *previous* insolvency at the time of the trade. So the use of the legal means to collect the note, and their failure to accomplish the collection, would have shown that the note was not good at

the end of the legal process, but would not have shown but what the debtor might have had ample means and credit, and so the note have been good, according to the universal understanding of the term, at the time when it was represented to be good. The value of paper can not be subjected to any such perfect test. Commercial paper is a marketable commodity, and its value is to be fixed, like that of other marketable commodities, by facts and circumstances, and also by the judgments of witnesses. The market value of a thing, is what it will bring in the market, and this can be proven only by the judgments of witnesses. It was contended in the argument, that the defendant's representation that the note was good, could not be legally fraudulent, though false in fact, because it was a representation concerning the solvency of the debtor—a subject, it was said, equally open to the knowledge of both parties. Where the subject of the representation is open to *inspection*, it is equally open to the knowledge of both parties, and in that case, each party must rely on his own inspection, and not on representations of the other. But solvency is not an object of inspection, and a knowlege of it is to be acquired not by inspection, but in large measure, by human testimony. The plaintiffs could have ascertained the solvency of the debtor, not by inspecting him nor by inspecting his possessions, but by inquiry, and the answers of persons who knew his affairs or knew his commercial standing in the market. And they never could have ascertained it, if all the persons to whom they might have applied, had done as the defendant did, if the evidence be true —that is, if they had all represented the note to be good when they knew it to be bad. The defendant spoke on the point which could be settled only by human testimony, and the plaintiffs surely had as much right to expect and require truth from the man who was receiving their money for it, as from the disinterested multitude in the streets. The plaintiffs, by their evidence, showed the trade, showed the representation, showed it to have been false, and that its false-

hood was known to the defendant when he made it. This was not a case for a nonsuit, but a case for recovery, unless the defendant had broken down the force of this evidence.

Judgment reversed.