## Case No. 3,884.

### In re DIBBLEE et al.

[3 Ben. 283;[1] 2 N. B. R. 617 (Quarto, 185); 1 Chi. Leg. News, 355.]

District Court, S. D. New York. June 2, 1869.

ACT OF BANKRUPTCY—INSOLVENCY — JUDGMENT—PREFERENCE — FIDUCIARY DEBT — ORDINARY COURSE OF BUSINESS — CONSTRUCTION OF STAT-UTE.

1. One member of a firm, composed of three persons, which was indebted to I. & Co., gave them a confession of judgment on February 25th, 1869. I. & · Co. kept the confession till April 30th, 1869, when they filed it, entered judgment for $54,105, and issued execution to the sheriff, who, on the same day, went to the store of the debtors and levied on their goods, and remained in possession till about 10 p. m. of the next day, when a transfer of $46.000 of accounts. bills receivable, and other securities, was made to I. & Co., in payment of the debt. On the morning of April 30th. before the sher-iff came, one of the firm paid $2,000 to K., up-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

on a fiduciary debt of $4,000, and the next day, while the sheriff was in possession, he gave K. $2,000 worth of securities to pay the rest of such debt: *Held*, that the giving of the confession of judgment did not, of itself, raise a presumption that the firm was insolvent when it was given.

2. If, at the time the sheriff appeared with the execution, the firm was unable to pay their debt to I. & Co., in the ordinary course of business, they were insolvent, within the meaning of the bankruptcy act [of 1867 (14 Stat. 517)].

[Applied in Scammon v. Cole. Case No. 12,-433. Cited in Baldwin v. Wilder, Id. 806.]

3. The ordinary course of business does not mean an ability to turn out goods or other property to pay one debt, without leaving in the debtor's hands assets to provide for other debts as they become due.

[Applied in Scammon v. Cole, Case No. 12,-433.]

4. If a debtor, at any time, from the state of his circumstances, contemplates that he will not be thenceforth able to pay his debts as they mature, in the ordinary course of business, he contemplates insolvency.

5. If a debtor, knowing that a debt is past due, and being insolvent or contemplating insolvency, refrains from going into voluntary bankruptcy, and his property is taken on legal process, the debtor suffers his property to be taken on legal process.

[Cited in Re Heller. Case No. 6,337. Explained in Re Dunkle, Id. 4,160.]

6. If the taking of the property of the firm by the sheriff had the necessary effect to give to I. & Co. a preference, which they would not have had otherwise, and if the firm, being insolvent or contemplating insolvency, suffered its property to be taken on that execution, they intended, in law, to give the preference which the taking of the property conferred.

[Cited in Re Marter, Case No. 9,143.]

7. If the transfer of the 1st of May put I. & Co. in a better position, as to their debt, than they occupied by reason of their levy, that gave them a preference which the law forbids.

8. The fact that the confession of judgment was signed by only one member of the firm, did not impair the effect of the judgment in determining the question of bankruptcy.

9. The fact that the debt to K. was a fiduciary debt, was not of consequence, nor was the fact that K. pressed for payment of it.

10. All the words of a statute must be construed in such manner as to give them force and effect.

[Cited in Re Merchants' Ins. Co., Case No. 9,441.]

11. Every one is supposed to intend the natural consequences of an act committed by him.

12. Neither the question whether the property, the transfer of which is alleged to have been an act of bankruptcy, shall be retained by the creditor to whom it was transferred, nor the question whether the bankrupt shall receive his discharge, will be affected by the verdict of the jury on the question whether an act of bankruptcy has been committed.

[Cited in Re Bunster. Case No. 2,136. Quoted in Re Dunkle. Id. 4,160.]

This was a proceeding in involuntary bankruptcy. The petition was filed by the firm of Garrett. Clark & Co., against the firm of Henry E. Dibblee & Co., of the city of New York, and alleged four acts of bankruptcy: (1.) That. on or about the 25th of February, 1869, the debtors, being insolvent and in contemplation of insolvency, gave to A. Iselin & Co. a warrant to confess judgment, and did procure and suffer their property to be taken on legal process, in favor of A. Iselin & Co., and that, on April 30th, 1869, said judgment was entered in the supreme court of the state, for $54,105, and execution was issued on it, and the debtors' goods levied upon, and that this was done with intent to give a preference to Iselin & Co., and to defeat and delay the operation of the bankruptcy act. (2.) That the debtors, being insolvent and in contemplation of insolvency, made a payment of money to Iselin & Co., with intent to give them a preference as creditors. (3.) That, on the 1st of May, 1869, the debtors, being insolvent and in contemplation of insolvency, made a transfer to Iselin & Co. of property amounting to about $46,000, with intent to give them a preference as creditors, and with intent to defeat and delay the operation of the act. (4.) That, in April, 1869, the debtors, being insolvent and in contemplation of insolvency, made a payment of $4,000, in money and bills receivable, to the wife of John J. Krauss, with intent to give a preference to her.

The bankrupts took issue on the petition, and the case was tried before a jury. On the trial the following facts appeared: The defendants gave the confession of judgment on the 25th of February. It was at that time delivered to Mr. Iselin. He kept it in his possession, or under his control, until the 30th of April. He then took it to the proper officer, and a judgment was entered up upon it for $54,105, and an execution was immediately issued on the judgment, to the sheriff of the city and county of New York. On the same day, the sheriff went to the store of Dibblee & Co. with the process, and made a levy on their goods, and took possession of such goods, to hold them, to be administered by the state court and applied upon the judgment. The sheriff remained in possession of the property during the remainder of that day—the 30th day of April—and all through the next day, which was the 1st of May, until about ten o'clock in the evening of the latter day, when a transfer of $46,000 worth of accounts, bills receivable, and other securities, was made by the three debtors, to Iselin & Co., in absolute payment and extinguishment of their debt. With the extinguishment and payment of the debt, the judgment and execution fell to the ground, the transfer of securities having been accepted by Iselin & Co. as a payment of the debt.

The facts in regard to the Krauss matter were as follows: On the morning of the 30th of April, before the sheriff came with the execution, Mr. Dibblee paid to Mr. Krauss, for Mrs. Krauss, $2,000 in money, on a debt of $4,000 due to her. During the next day, the 1st of May, while the sheriff was in possession under the execution, and before the making of the transfer of securities to Iselin & Co. on the evening of the 1st of May, Dibblee

handed over to Mr. Krauss $2,000 worth of securities, to pay up the balance of the debt of $4,000 due to Mrs. Krauss.

C. H. Smith, for petitioning creditors.
A. R. Dyett, for bankrupts.

BLATCHFORD, District Judge, charged the jury as follows:

This case, gentlemen, is one involving principles of very great importance under the bankruptcy act. The general features of that law, and the object which congress had in view in enacting it, are undoubtedly very well understood by you, as business men, engaged in the daily avocations of life. The counsel for the petitioning creditors, in summing up, has stated very aptly and clearly the objects which the bankruptcy law contemplates, and intends to carry out, in destroying the system that had previously obtained, by which failing debtors were enabled to prefer whom they pleased as their creditors, such preferences taking different forms—in some cases, chattel mortgages; in other cases, judgments; in others, the turning over of securities; and the numerous other forms in which creditors could be preferred by insolvent debtors. To such debtors the bankruptcy law says, in explicit language—"You must not make these preferences, but you must give all your property up to be distributed equally among your creditors."

In this case there are, in the petition, four different acts of bankruptcy charged. The first one is, that, on the 25th of February, 1869, the three debtors, Dibblee, Bingley and Krauss, composing the firm of H. E. Dibblee & Co., being insolvent, gave to Iselin & Co. a warrant to confess judgment, and procured and suffered their property to be taken on legal process. Although the petition is so drawn as to state the fact that, on the 25th of February, the debtors, being insolvent, gave to Iselin & Co. a warrant to confess judgment, and suffered their property to be taken on legal process, the evidence is, that no property was taken on legal process until the 30th of April. But the same allegation of bankruptcy goes on to state, that, on the 30th of April, 1869, said judgment was entered in the supreme court of the state of New York, and a judgment roll was filed for $54,-105, and execution was issued thereon against the property, &c. It appears, therefore, that the statement in regard to suffering the property to be taken on the 25th of February, is a clerical error, the substance of the averment being, that the debtors gave a confession of judgment on the 25th of February, when insolvent, and, on the 30th of April, when also insolvent, suffered the property to be taken under an execution issued on that judgment.

Now, so far as the giving of the warrant on the 25th of February is concerned, there is no evidence in the case upon which you could safely base any verdict that, at that time, the debtors were insolvent, or contemplated insolvency; and the case has not been tried upon that idea. The transactions of the 30th of April, and of the 1st of May, are the transactions to which your attention is to be directed. For aught that appears, notwithstanding a confession was given on the 25th of February, there was no insolvency at that time, and no contemplation of insolvency; because, the giving, as security, of a warrant to confess judgment, on which the creditor might enter a judgment at any time, by no means, of itself, raises any presumption of insolvency.

To come, then, to the transactions of the 30th of April and the 1st of May, the averment is, that, on the 30th of April, these three debtors, being insolvent, or in contemplation of insolvency, suffered their property to be taken on this execution, with intent thereby to give a preference to the Iselins, and with intent, by such disposition of their property, to defeat and delay the operation of the act. On that subject the act is very explicit. The question you are to try is solely, whether Dibblee, Bingley and Krauss shall be adjudged bankrupts, by reason of any acts which they committed or suffered. You are not now, in any manner, trying the question whether Iselin & Co. shall be compelled to refund what they received, or whether Mrs. Krauss shall be compelled to refund the money and securities which she received. These questions are not at all involved here. If these debtors shall be declared bankrupt, and an assignee shall be appointed, and he shall bring an action against Iselin & Co. and an action against Mrs. Krauss, nothing that has transpired here—neither your verdict nor the adjudication of the court, if your verdict should be in favor of the creditors—will in any manner whatever determine or affect any question that will be involved in any such suit. Nor will your verdict in any manner affect the debtors on the question of their discharge in bankruptcy. If they shall be put into bankruptcy, and shall hereafter apply to be discharged, and no one of their creditors shall choose to oppose them, and they shall take the oaths which the law requires, they will be discharged, notwithstanding they may be adjudged bankrupts in this proceeding. Therefore, the case is stripped of all questions as to the discharge of the bankrupts hereafter, and of all questions as to the right of Iselin & Co. and of Mrs. Krauss to hold what they received.

In regard to Iselin & Co., I state this further proposition, that, to put a debtor into bankruptcy, for such causes as are alleged as the first ground of bankruptcy in the petition in this case, it is only necessary that the intent spoken of should have existed on the part of the bankrupt. If Iselin & Co. had, at the time they took a preference, if they did take one, no reasonable ground to believe that the debtors were insolvent, they cannot be compelled to pay back what they

received, notwithstanding the debtors were, in fact, insolvent, and notwithstanding the debtors knew they were insolvent, and notwithstanding the debtors intended to prefer Iselin & Co. Therefore, the sole question is, whether these debtors shall be adjudged bankrupt, so that their estate shall be administered by this court, in bankruptcy, and nothing is involved in regard to the title of Iselin & Co. or of Mrs. Krauss to what they received, or in regard to the right of the debtors to receive their discharges hereafter from the court. I say this for the purpose of disabusing your minds of any impression they may have received from the remarks made by counsel.

The statute provides, that if any debtor, being insolvent, or in contemplation of insolvency, makes any conveyance or transfer of property, or money, or suffers his property to be taken on legal process, with intent to give a preference to one or more of his creditors, or with intent, by such disposition of his property, to defeat or delay the operation of the act, he commits an act of bankruptcy, for which this court may take his property and treat him as a bankrupt. In this, there are, as you perceive, several ingredients. In the first place, the debtor must either be insolvent, or contemplate insolvency. In the second place, he must make a conveyance or transfer of money or property, or he must suffer his property to be taken on legal process. In the third place, he must do this with the intent, on his own part, to give a preference to the creditor, or with the intent, on his own part, to defeat or delay the operation of the act.

The first question for your consideration, gentlemen, is, whether, at the time this property was taken by the sheriff on legal process, on the 30th of April, Dibblee and his firm were insolvent or contemplated insolvency. So far as concerns the financial transactions of the firm, Dibblee appears to have been the firm, and I shall treat him as the firm for the purposes of this case, because the other debtors appear to have been merely salesmen. Now, at the time the sheriff came with his process, on the 30th of April, to take this property, the firm owed Iselin & Co. this debt. It was past due. Iselin & Co. appear to have had a right to enter judgment, and this debt appears to have been legally due at any time after the 25th of February, although there may have been some understanding that judgment should be withheld for thirty days. At all events, the debt had been overdue for more than thirty days at the time the sheriff arrived. So far as appears, it was the only debt then due. But, one overdue debt is sufficient to put a party in the condition of owing a debt which he is unable to pay. If, at the time the sheriff appeared with the execution, to levy on the stock of goods, the firm owed this debt to Iselin & Co., and were unable to pay it in the ordinary course of their business, they were then insolvent, in the language of the bankruptcy act, and within its meaning. No matter how many other debts there were, not yet due, if they were unable to pay that debt, in the ordinary course of their business, they were insolvent. The "ordinary course of their business" does not mean an ability to turn out goods, or bills receivable, or assets or securities, to pay that one particular debt, at the same time leaving other debts, which are certain to become due, unprovided for, and not leaving sufficient assets in the hands of the debtors to meet them when they become due. It is not in the ordinary course of business for a party who has a store of goods and other securities, and owes a matured debt, to turn out a large portion of those goods, or to take the most valuable of his securities, and turn them over to the creditor, to extinguish that debt, if sufficient assets do not remain to pay the rest of his debts, in the ordinary course of his business. That is an extraordinary course of business, and not the ordinary course of business. Therefore, if, when the sheriff appeared to levy on this stock of goods, the firm was not able to pay this debt to Iselin & Co., in the ordinary course of business, it was insolvent. If, at that time, Dibblee, in his own mind, from a view of the state of things which surrounded him, contemplated that his firm would not be, and continue to be, thenceforth, able to pay their debts, as such debts should mature, in the ordinary course of their business, then he contemplated insolvency; and, if he contemplated insolvency, that puts the case in precisely the same predicament as though he had been insolvent, because, the language is, "being insolvent or in contemplation of insolvency." A debtor has no more right to do the forbidden act when he contemplates that, in view of the existing aspect of affairs, he will not be able to pay his debts, in the ordinary course of his business, than if he were actually at the time insolvent. If he contemplates insolvency, it is of the same force and effect as if he were actually insolvent, by reason of his not being able to pay a debt past due at the time.

If you shall find that, at the time the sheriff appeared, Dibblee, or his firm, were insolvent, or contemplated insolvency, you will then pass to the second question. If you find that he and his firm were not insolvent, and did not contemplate insolvency, that disposes of this branch of the case. But, if you find that he or they were insolvent, or contemplated insolvency, then you will inquire— Did they suffer their property to be taken on legal process at that time?

The act provides, that, if the debtor shall, under the circumstances stated, "procure or suffer his property to be taken on legal process," he shall be adjudged a bankrupt. The word "procure" and the word "suffer" have different meanings. The former is active, and the latter is passive. A man may suffer a thing to be done, when he has the means

of doing something other than suffering it to be done, without procuring it to be done. In this case, the debtors knew that the warrant to confess judgment had been given on the 25th of February. They knew that the debt to Iselin & Co. had been past due for at least thirty days. They knew that Iselin & Co. could at any moment enter up judgment on the warrant. And, if Mr. Dibblee, at the time the sheriff came there, or any time prior thereto, was insolvent, or contemplated insolvency, he was in a condition in which the bankruptcy law required him to take proceedings for coming into the bankruptcy court, and submitting his property voluntarily to the administration of the bankruptcy law; because, in order to enable a person to come voluntarily into the bankruptcy court, it is only necessary that he should present a petition stating the necessary jurisdictional facts, and averring that he is unable to pay all his debts in full. If, therefore, Dibblee, at the time the sheriff came there, or at any time previously, knowing of this debt to Iselin & Co., and that it was past due, and being insolvent, or contemplating insolvency. refrained from going into bankruptcy voluntarily, then, in judgment of law, he suffered his property to be taken on legal process; because, if, prior to the entry of that judgment and the issuing of an execution thereon, he had gone voluntarily into bankruptcy, the bankruptcy court would have taken the property, and the judgment and execution would have had no force or effect to take it. Therefore, in judgment of law, if he omitted to go into bankruptcy, under such circumstances, he suffered his property to be taken on legal process. Unless this construction be given, there is no more meaning to the word "suffer" than to the word "procure." All the words of a statute must be construed in such manner as to give them force and effect.

If you shall find that Dibblee contemplated insolvency, and suffered his property to be taken on legal process, you will then consider the question, whether he did so with intent to give a preference to Iselin & Co., or with intent to defeat or delay the operation of the bankruptcy act. This intent must be an intent on the part of Dibblee; and, unless Dibblee, at the time, knew that he was insolvent, or contemplated insolvency. he could have no intent to give a preference to one creditor over another. If a person, while paying one creditor, honestly supposes that he is able to pay every creditor, there can be no intent to give a preference. Therefore, if Dibblee did not, at the time, believe he was insolvent, and did not contemplate insolvency, he could have had no intent to give any preference. But, if he was insolvent, or contemplated insolvency, and suffered his property to be taken in this way, then. if the taking of the property by the sheriff had the necessary effect to give to Iselin & Co. a preference which they otherwise would not

have had, Dibblee, in judgment of law, intended to give the preference which the taking of the property conferred and effected; and the burden is thrown on him, Dibblee, to show that he had no such intent, and to make that out to your satisfaction.. In law, every one is supposed to intend the natural consequences of an act committed by him.

It is of no consequence that an arrangement was made, originally, to give to Iselin & Co. this preference. The paper signed and given on the 25th of February did not give a preference. It would have amounted to nothing if the judgment had never been entered and the execution had never been issued. The preference was given by the issuing of the execution, followed by the levy, so far as the goods were concerned. Therefore, you have nothing to do with the fact that there was an arrangement made originally, when the money was loaned by Iselin & Co., that they should have this species of security.

On the question of intent, there is the further alternative point, whether there was an intent to defeat or delay the operation of the act. Very little has been said on that subject, and I think it hardly worth while to call your attention to it, because the whole case turns upon the other branch.

So far, in respect to the Iselin matter, your attention has been directed to the levy by the sheriff. But the Iselin matter has another phase, namely, the transaction on the evening of the 1st of May, in regard to the bill of sale, which transferred securities to Iselin & Co. in payment of their debt. That is a separate and independent transaction, and is made a separate ground, in the petition, for asking to have Dibblee & Co. adjudged bankrupts. All the debtors joined in making the bill of sale. In respect to the confession of judgment. Dibblee appears to have signed it with his individual name, and also with the firm name. The other partners did not sign it, and appear to have known nothing about it; and I am asked to charge that on that ground it is illegal and void. I do not conceive that this court has anything to do with that question. If the state court has permitted the judgment to be entered up against all three of the debtors, and the execution to be issued, I must presume that this was done in the legal and proper way. This court must treat the record of the state court as being in due form; and, therefore, although the other partners appear to have had nothing to do with giving the confession of judgment, I must treat the judgment and execution as not being impaired by reason of any defect of that kind.

I now recur to the third alleged act of bankruptcy. It is, that the debtors, on the 1st of May, being insolvent, or in contemplation of insolvency, made to Iselin & Co. a conveyance or transfer of a large number of bills receivable and accounts belonging to the firm, to the value of $46,000, with intent

to give a preference to Iselin & Co., and to delay and defeat the operation of the act. The same elements of insolvency, or contemplated insolvency, enter into this branch of the case, as into the first, and the same remarks are applicable. It is urged, on the part of Dibblee, that, because of the prior levy, no preference was given to Iselin & Co. by this transfer. But, although the levy of the sheriff on the property was in force from the time it was made, on the 30th of April, until the bill of sale was given, and although Iselin & Co. thus had whatever security such levy gave to them, still, if, in your judgment, upon the evidence, the transaction of turning over these securities, by a bill of sale, to Iselin & Co., had the effect of putting them, as creditors, into any better position in respect to their debt than that which they occupied by virtue of the levy on the stock of goods, then it gave to them a preference which the law forbids. If it did not have that effect, then it gave them no preference.

If you shall find that there was such a preference given by the bill of sale, the next question will be, whether Dibblee, at that time, had the intent to put Iselin & Co. in a better position, by the bill of sale, and thus to give them a preference. Now, all the remarks on the law as to insolvency, or contemplation of insolvency, which I made to you in regard to the state of things which existed when the levy was made by the sheriff, are applicable to this branch of the case. But, in applying the law to the facts of the case, you will bear in mind that, between the time the sheriff came and the giving of the bill of sale, there was a material change in the condition of the firm, which has been stated to you very clearly by Dibblee himself, in his testimony. He states that Iselin's levy destroyed their credit; and that, after that, they could not have gone on; that, when the execution was levied, if they could have gone on in business, he thinks they could have paid their debts in full; but that the levy destroyed their credit, and they could not go on. Therefore, the fact of the sheriff's levy, and that he had taken possession of the store, the necessary publicity, and the consequences which followed it, none of which existed at the instant before the sheriff came there, and all of which existed on the evening of the 1st of May, when the transfer was made by bill of sale, must be taken into consideration by you in determining whether, (if you find that the transfer had the effect of putting Iselin & Co. in a better condition than they were in by reason of their levy,) when the bill of sale was given on the evening of the 1st of May, the firm were insolvent, or contemplated insolvency. Did they, at 10 o'clock on the evening of the 1st of May, the sheriff being then in possession of their goods under a levy, and the matter having become public, believed that they were able to pay the debt of Iselin & Co., in the ordinary course of business, or believe that, if they continued on, in that state of things, they would be able, in the ordinary course of business, to pay their debts in future, as they should become due, in the ordinary course of business?

This disposes, as I understand it, of all the questions connected with the Iselin matter, which have been called to my attention by the counsel for the respective parties.

The fourth act of bankruptcy alleged is the Krauss matter, which has two phases—the payment of the $2,000 in money, on the 30th of April, and the transfer on the following day, while the sheriff was there, of the $2,000 in bills receivable. The fact that the debt, as between Mrs. Krauss and the firm, was a fiduciary debt, is of no consequence in this case. For the purposes of this case, it was nothing more than an ordinary debt. It stood in no better condition, and the firm had no more right to pay it, than any other debt. Nor does it make any difference that Mrs. Krauss asked for it, and pressed for payment of it. This doctrine has no place under the present bankruptcy act. That act recognizes no distinction between the giving of a preference when a creditor asks for it, and the giving of a preference when the creditor does not ask for it, provided the intent exists on the part of the debtor, in giving the preference, that the particular creditor shall have the preference. If, therefore, you shall find that this firm, being insolvent, or contemplating insolvency, paid $2,000 to Mrs. Krauss, on the 30th of April, with intent to prefer her over other creditors, or, on the next day, handed over to her $2,000 worth of securities with that intent, they committed an act of bankruptcy.

If you shall find in favor of the petitioning creditors on any one of the questions which I have submitted to you, they will be entitled to your verdict. It does not require that you should find for them on all those questions; but, if you shall find that any one of the alleged acts of bankruptcy is established to your satisfaction, your verdict will be for the creditors.

The petitioning creditors having withdrawn the second and third acts of bankruptcy alleged in the petition, the jury rendered a verdict in favor of the creditors as to the first and fourth acts of bankruptcy alleged in the petition.

[NOTE. For further proceedings in this case, see Cases Nos. 3,885–3,887. In a suit subsequently brought by the assignee in bankruptcy, the transfers to Iselin & Co. were declared void by the district court, and its decree was, in the main, affirmed by the circuit court on appeal. See Clark v. Iselin, Cases Nos. 2,824 and 2,825. On appeal to the supreme court, however, these decrees were reversed, and the transfers sustained as valid. Clark v. Iselin, 21 Wall. (88 U. S.) 360.]