## SILVEY & COMPANY *v.* TIFT, trustee.

1. Where creditors filed a petition to have a debtor adjudged an involuntary bankrupt, alleging several acts of bankruptcy, among them being that while insolvent he made a preference to a firm, named as creditors, within four months before the filing of the proceedings; and after adjudication in bankruptcy the trustee brought suit against such firm, alleging that they received·a preference with reasonable ground for believing that it was such, the adjudication in bankruptcy duly made was conclusive of the status of the bankrupt as such, but did not estop the defendants from setting up by way of defense, that, some time prior to the proceedings in bankruptcy, they sold to the bankrupt goods, relying on certain representations made by him; and that they discovered that such representations were untrue, and rescinded the sale on account of fraud and retook their goods.

2. Where such a defense was made, and the defendants sought to show that the purchaser returned to them after the sale and stated that he had made a material misrepresentation, and thereupon they rescinded the sale, in a suit by the trustee in bankruptcy afterwards appointed, against them as preferred creditors who had taken with reasonable ground to believe that a preference was made, it was error to instruct the jury that they could consider the statement so made, solely for the purpose of impeaching the bankrupt, who was a witness for the plaintiff.

3. If one purchasing goods makes a false representation as to a material matter, and the owner relies on such statement in making the sale, upon discovering the fraud he may rescind and reclaim his property, or so much of it as is still in the hands of the purchaser; or he may elect to continue the contract. If he elects to rescind, he must give notice to the purchaser thereof, and of his determination to reclaim the goods sold; and if he has received anything in payment, he must return it or tender it to the purchaser.

4. If a vendor, in reliance upon material misrepresentations, has made a sale and has rescinded it on discovery of the fraud, but all of the property sold is not in the possession of the purchaser and some of it has been sold or disposed of by him ·so as to be beyond the reach of the vendor, the latter may reclaim all of the property which can be recovered. As to that which he can not recover, he may have a right of action against the purchaser, not upon the contract of sale, but based on the theory of the conversion of the goods not found, or an action based upon the contract implied by law where a vendee has disposed of the goods for money and the seller has waived the tort. He can not, however, proceed both under the contract of sale and against it.

5. While in the present case there may have been sufficient evidence to authorize the verdict, it was not so clearly demanded that a new trial will not result from the errors of law.

Submitted June 26, — Decided August 4, 1905.

Complaint.    Before Judge Reid.    City court of Atlanta. December 17, 1904.

Tift, as trustee in bankruptcy of Griffin, brought suit against

John Silvey & Company, alleging as follows: On March 15, 1902, Griffin, while insolvent, transferred and delivered to the defendants a portion of a certain stock of goods belonging to him. At the time of the transfer he was insolvent, and the defendants knew and had reasonable cause to believe that such was the case. The effect of the transfer was to enable them to obtain a greater percentage of their debt than the other creditors of the bankrupt of the same class received, and was a preference in contemplation of the act of Congress of July 1, 1898, entitled "An act to establish a uniform system of bankruptcy throughout the United States." The defendants received this preference, and had reasonable cause to believe that it was intended to give them a preference in contemplation of the act of Congress. They took possession of the property, carried it away, and converted it. On April 29, 1902, certain creditors of Griffin filed a petition in bankruptcy in the district court of the United States, alleging the commission of certain acts of bankruptcy by him, and praying that he be adjudicated a bankrupt. He was duly adjudicated a bankrupt, and the plaintiff was appointed trustee. In that capacity and under leave of the court, he sues to recover of the defendants the value of the property so taken by them, which is alleged to be $1,400. The plaintiff alleged that the defendants were concluded and estopped from setting up in this suit "any defense in contradiction to the following facts." The petition then contains what appears to be a copy of a part of the petition in bankruptcy. A demurrer having been filed, the entire petition was set out by amendment, which showed that a number of creditors of Griffin filed a petition to have him adjudicated a bankrupt, alleging him to be insolvent. Three acts of bankruptcy were alleged: First, that, within four months next preceding the filing of the petition, Griffin, while insolvent, transferred a portion of his property, namely a large part of his stock of goods, of the value of $500, to one Weslosky, doing business under the trading name of the Albany Grocery Company, a creditor, with intent to prefer him over his other creditors. Second, that, while insolvent and within four months next preceding the filing of the petition, he transferred a portion of his property, namely about $1,400 worth of hats, shoes, and dry goods, to John Silvey & Company, creditors of his, with intent to prefer them over his other creditors. Third,

that, while insolvent and within four months next preceding the date of the petition, he suffered and permitted one Turner, a creditor, to obtain a preference through legal proceedings, and did not within five days before the sale of the property vacate or discharge such preference, the levy being under a distress warrant for rent for $127, and being made upon a lot of hats, shoes, dry goods, etc., which were sold under the warrant, and the proceeds applied to the payment thereof. A subpœna issued to the alleged bankrupt on April 29, 1902, and on May 28 he was adjudicated a bankrupt. Later the trustee was regularly appointed.

To that portion of the petition which set up an estoppel a demurrer was urged on the ground that some of the allegations were not properly pleaded, and did not set out facts constituting an estoppel, and merely alleged legal conclusions. The allegations demurred to were as follows: "Petitioner further represents that defendants to this case are concluded and estopped from setting up in this suit any defense in contradiction to the following facts." Also, "The allegations of said petition set out above, being necessary allegations of said petition, the said John Silvey & Co. could then and there have pleaded, in defense to said petition, denial of the facts set out in the allegations of said petition transcribed above, and, having failed in said court to sustain any denial or contradiction of any of said facts and allegations, they are now concluded and estopped from contradicting and denying them, because of the judgment of the district court of the United States of the southern district of Georgia, made in said matter in favor of the petitioners in bankruptcy, declaring said Ernest H. Griffin bankrupt, said judgment being made and rendered duly and regularly by a court of competent jurisdiction." The court overruled the demurrer to the declaration as amended, and exceptions pendente lite were taken. The jury found for the plaintiff $468.68 principal, besides interest. Defendants moved for a new trial, which was refused, and they excepted. They also assigned error on the overruling of the demurrer.

*Candler & Thomson* and *W. D. Thomson*, for plaintiffs in error.
*Arthur Gray Powell* and *Shepard Bryan*, contra.

LUMPKIN, J. (After stating the facts.) 1. The demurrer to the original declaration contained various grounds, but only one is now insisted on. We do not think it good pleading to allege

that a defendant is estopped from setting up any defense in contradiction "to the following facts;" and then to set out an entire proceeding in bankruptcy, containing various allegations, several grounds for the proceeding, the adjudication and the appointment of the trustee, and to allege in sweeping terms that the allegations set out are necessary allegations, and that the defendants could have pleaded in defense of them, but failed to do so, and are estopped from contradicting or denying them. This leaves the court to ascertain what defense the pleader deems to be in conflict with "the following facts." Moreover to copy a part of a proceeding in bankruptcy and to allege generally that it comprises necessary allegations is a conclusion. It appears from the order overruling the demurrer that this was done after amendment, from which we presume that it was renewed after the amendment had been made. The real question argued before us was whether the adjudication in bankruptcy was conclusive on the defendants to the effect that the goods sued for belonged to the bankrupt on March 15, 1902, and were transferred by him to them with intent to prefer them as creditors over his other creditors, he being insolvent at the time. Their defense was that they had sold goods to Griffin upon certain representations made by him; that they ascertained that these representations were false, and the goods were therefore procured from them by fraud; and that they thereupon rescinded the sale and retook such of the goods as were on hand, not as a payment or preference to creditors, but as being a taking possession of their own goods. If the plaintiff's contention as to the effect of the adjudication is correct, the defendants would be practically precluded and estopped from defending at all, save possibly on the question of notice; and there would be little to do but take a verdict for the value of the goods. The allegations which he says are necessary, in the petition to have Griffin adjudicated a bankrupt, include not only his insolvency, but also a statement of a transfer by him of a portion of his property to the defendants, the value of the goods so transferred, and that this was a preference. The presiding judge overruled the demurrer.

An adjudication in bankruptcy is in the nature of a proceeding in rem, and the adjudication is in the nature of a decree in rem so far as it fixes the status of the defendant in the proceeding as a

bankrupt. Considered in the light of a proceeding in rem, the res involved is the status of the debtor, and the adjudication determines such status to be that of a bankrupt. All persons are bound by the adjudication to that effect; and this was true under the act of 1867 as well as under the act of 1898. If the court rendering the judgment had jurisdiction, such judgment could not be attacked collaterally, but only by a direct proceeding in a competent court, unless it appeared that the decree was void in form or that due notice was not given. Lamp Chimney Co. *v.* Brass & Copper Co., 91 U. S. 656; Chapman *v.* Brewer, 114 U. S. 158; Shawhan *v.* Wherritt (under the act of 1841), 7 Howard, 158; Hanover Nat. Bank *v.* Moyses, 186 U. S. 181, 192. Where a proceeding in rem is against a particular piece of property, as a vessel, for charges against it, it is generally taken into possession, and the property itself is treated as the defendant liable for its own debts or defaults; and after seizure, subsequent proceedings are had by citation to the world, of which the owner is at liberty to avail himself by appearing in the case. In the present case, however, there was no such proceeding in rem against these goods. The proceeding was to determine the status of Griffin as a bankrupt, and it neither was nor could have been commenced by a seizure of the property claimed by the defendants. Mankin *v.* Chandler, 2 Brock. (U. S. C. C.) 125; The Sabine, 101 U. S. 388; Freeman *v.* Alderson, 119 U. S. 187. To illustrate further, proceedings to appoint an administrator are also in the nature of proceedings in rem, and, where the court has jurisdiction, are not subject to collateral attack. But it will not be contended that if a person applies for administration, and sets out in his petition that the entire estate of the decedent consists of a certain house and lot, the judgment appointing him would establish the title of the estate to the property, if in fact it belonged to another than the decedent. The judgment would establish the status of the applicant as an administrator, and that he was duly appointed, but would not determine the title to property. There are two kinds of actions which are commonly spoken of as proceedings in rem. The first is a proceeding against the property without suit against its owner, treating the property as if it were the defendant; but with monition or notice giving any person claiming to be the owner an opportunity to appear. In this class

of actions, which are strictly in rem, the judgment is against the property alone. The other class of proceedings in rem are proceedings to determine the status of some person or subject-matter. Such are judgments of outlawry, appointments of guardians, administrators, etc., — where the proceeding is to determine status, not title to property. The res which makes it a proceeding in rem is the status, and the determination of status is not a conclusive judgment against third parties as to title. Sometimes a judgment in rem has been defined generally to be an adjudication pronounced upon the status of some particular subject-matter, by a tribunal having competent authority for that purpose. *Stroupper* v. *McCauley,* 45 *Ga.* 74, 78; *Childs* v. *Hayman,* 72 *Ga.* 791, 796–7; Woodruff *v.* Taylor, 20 Vt. 65.

In the act of 1898 it is provided that "The bankrupt, or any creditor, may appear and plead to the petition within ten days after the return day, or within such further time as the court may allow." Sec. 18 b, 1 Fed. Stat. Ann. 583. The bankrupt and his creditors are those given an opportunity to appear and defend against the adjudication in bankruptcy. The defendants in the present case, however, do not claim to be creditors, or defend as such, but contend that they were defrauded out of certain goods, and upon discovering the fraud rescinded the trade and resumed possession of their own goods. To compel them to admit that they were creditors and received the goods as such would require them to waive their defense before they could make it. In some of the decisions creditors are spoken of as being privies of the bankrupt. Often, however, they claim against the debtor rather than as privies. To hold that creditors could, by the petition in bankruptcy and the adjudication, conclusively subject the property of third parties, and make it a part of the estate of the bankrupt, if in fact it was not so, would be to go far beyond the determination of his status. To put an extreme case, suppose that creditors should seek to have their debtor declared a bankrupt, and in their petition should allege that he had conveyed a house and lot to a named person, as one among other grounds of the proceeding, when in fact the debtor had never owned the house and lot, and had never transferred it to the person named at any time. Clearly an adjudication that the debtor was a bankrupt would not invest him or his trustee with title to the property, or

operate to take away the title of the real owner, who had never been sued or summoned into court, and who, perhaps, never heard of the proceeding. In such a case, to hold that the adjudication of bankruptcy against the debtor would take away the property of a third person, and add it to his estate, would approximate more nearly confiscation than adjudication. Suppose one should steal the property of another, and upon its discovery the real owner should resume possession; if later creditors of the thief should file a petition in bankruptcy against him, alleging that he had given a preference to the owner, surely an adjudication that the thief was a bankrupt would not vest the stolen property in him or the trustee. The object of the proceeding is to have the debtor adjudged to be a bankrupt, not to recover property from third parties. They can not deny that he is a bankrupt, but they can deny that he owns their property. To adjudge A's status is not to adjudge B's property. In the case of *Traders Ins. Co.* v. *Mann*, 118 *Ga.* 381, 382, where a policy of insurance had been transferred by a debtor to creditors, and the debtor was afterwards adjudicated a bankrupt, it was held, "That the adjudication in bankruptcy was based on the fact of such preference having been made did not of itself authorize the trustee to ignore the assignment; but it would have been necessary to have the same set aside, or secure a reassignment in writing, before he could sue on the policy in his own name." In the opinion Mr. Justice Lamar said: "The adjudication in bankruptcy was not binding on them [the creditors who received the policy]. As a judgment in rem it conclusively fixed the status of Screws as a bankrupt, but Everett, Ridley, Ragan & Company had still a right to be heard on the validity of the transfer. They might have been able to show that it was not made within four months before the filing of the petition in bankruptcy, or that they had acted in good faith, without notice of insolvency, and purchased the policy for full value."

In Lewis *v.* Sloan, 68 N. C. 557, it was held: "The jurisdiction of a bankrupt court being conceded, its adjudication of bankruptcy is a judgment in rem fixing the status of the bankrupt which upon that point is binding upon all the world, and can only be impeached for fraud in obtaining it. . . Every court, however, in which a controversy as to the title to the property,

alleged to have been fraudulently conveyed may arise, has jurisdiction to inquire whether the conveyance was in fact and in law fraudulent, i. e. whether the conditions prescribed by the act to make it fraudulent existed." In the opinion it was said: "Although the adjudication of bankruptcy is a judgment in rem and as such conclusive on all the world, and although in arriving at that judgment the bankrupt court declares the conveyance alleged as the act of bankruptcy to be a preference among creditors, and therefore fraudulent within the meaning of the act, yet such declaration is no part of the judgment, but is merely incidental to it, and, so far from being conclusive on strangers that the conveyance was fraudulent, is not even evidence against them for that purpose. It is merely 'res inter alios acta quæ nemine nocere debet.' No one not a party to the record is affected by it, except so far as it is in rem. [Duchess of Kingston's case, 2 Smith's L. C. 438 to 447.] Barrs v. Jackson, 1 You. & Coll. 585, s. c. 1 Phil. 582. Of the American cases see King v. Chase, 15 N. H. 9. In addition to what is said in those cases, there is a reason why the effect of a judgment in rem should be more closely confined to the precise point adjudged, viz., that, so far as it is in rem and fixes the status of the person or property affected, it binds all the world; whereas a judgment in personam binds only parties and privies who have once had an opportunity of contesting it." In Neustadter v. Chicago Dry Goods Co., 96 Fed. 830, it was held by Judge Hanford, of the United States district court, that, "Where the issues arising upon a petition in involuntary bankruptcy were decided adversely to the petitioners, and an order dismissing the proceedings, no notice of the proposed dismissal being given to the other creditors," certain of such other creditors could not have the case reinstated, but were not debarred from bringing a new and independent petition in bankruptcy against the debtor.

In re Ulfelder Clothing Co., 98 Fed. Rep. 409, where in a petition for involuntary bankruptcy the debtor and one of his creditors answered the petition, putting in issue the allegation of insolvency, and also denying that the petitioner was a creditor, and on a trial the allegations of the petition were found to be true, and an adjudication in bankruptcy made, it was held to be conclusive evidence of the validity of the petitioner's claim when

it was presented for an allowance as a claim against the bankrupt's estate, and that it could not be disputed either by the bankrupt or a creditor who joined in the proceedings and opposed the adjudication. But the petitioning creditor having put in evidence certain promissory notes made by the debtor to third parties for the purpose of proving insolvency, and the debtor having contested their validity and consideration, and upon the hearing, with evidence on both sides, the court having found the allegations of the petition to be true, and made an adjudication of bankruptcy, it was held that as such notes were not directly in issue, but only collaterally brought in question, and as the holders thereof were not parties to the proceeding, the adjudication in bankruptcy was not conclusive of their validity, and would not preclude the bankrupt from opposing their allowance as claims against his estate. In the course of the opinion De Haven, District Judge, said: " If the court, upon the evidence then before it, had found against their validity [that is, the validity of the notes of the other creditors], and for that reason had adjudged that the corporation was not insolvent, and dismissed the proceeding, such finding and judgment would not have constituted a bar to a subsequent action by Henry Ulfelder and A. Levy [holders of the notes] against the bankrupt to recover upon the same claims. They would not have been estopped by such a judgment, because, not being parties, the question of the validity of their present claims was not, and could not have been, litigated by them in the insolvency proceeding. In the case of In re Schick, 2 Ben., 5 Fed. Cas. No. 12,455, the defendant was adjudged a bankrupt upon the ground that a certain judgment confessed by him in favor of one Cowen was an act of bankruptcy, and in the course of the opinion it was said by Blatchford, J.: 'This proceeding, however, is, so far, one merely between the petitioning creditor and the debtor. Cowen is no party to it, although examined as a witness for the creditor; and in the further progress of the matter, if the assignee of the debtor to be appointed should institute proceedings to realize, for the benefit of the debtor's estate in bankruptcy, the property levied on by the sheriff under the execution, Cowen will have a full opportunity to assert his rights, and maintain, if he can, the integrity of the judgment, and there is nothing in this adjudication to preclude him from doing so.' And in the case of In re

Drummond, 1 N. B. R. 231, Fed. Cas. No. 4,093, McDonald, J., in adjudging the defendant bankrupt because of his act in preferring certain creditors, said: 'It is proper, also, to say that I give no opinion touching the liability of any of the preferred creditors in case of a suit against them by the assignee in bankruptcy who may be appointed in this case. . . And, indeed, as the preferred creditors are not parties to this proceeding, it would be unjust that the present decision should in any manner affect their interest, except so far as it fixes the, status of Drummond as a bankrupt.' See, also, In re Dibble, 3 Ben. 283, Fed. Cas. No. 3,884."

In Magnus v. Hetcham, 112 Fed. 752, it is stated broadly in the syllabus that "An adjudication of involuntary bankruptcy, duly entered on default for want of an answer to the petition, is as binding on the bankrupt and creditors as one entered upon a hearing, and is conclusive of the commission of the acts of bankruptcy charged in the petition." A careful examination of the entire case, however, will show that the real question was whether the adjudication was binding on the question of the insolvency of the bankrupt, and that the creditor who was held to be concluded was a judgment creditor who had obtained the judgment by confession; that in connection with the proceedings in bankruptcy an injunction was prayed for and issued, restraining a sale under the execution; that the creditor appeared and moved to dissolve the injunction, and by agreement a modification was made in the order, and he had ample opportunity to contest the point in issue.

A slight consideration of the difference between the issues involved in a proceeding of bankruptcy, and a suit to recover property from a person holding it adversely and claiming to be the owner, will show that the two proceedings are not identical, and that the former is not conclusive of the latter except as to determining the status of the bankrupt as such. The issue in the former proceeding is whether the debtor is or is not a bankrupt within the meaning of the act of Congress. Where it is sought to recover property from one alleged to be a creditor who has received a preference, the proceeding rests upon section 60 b of the bankrupt act, which reads as follows: "If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication,

and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." The various requisites to a recovery under this section of the act are quite different from the mere determination upon the proceedings in bankruptcy that the debtor is a bankrupt.

This position may be further illustrated by considering a voluntary proceeding in bankruptcy. While differing from a proceeding in invitum, the adjudication there as to the status of the bankrupt would also be to some extent in the nature of a judgment in rem, so as to show that he was a bankrupt; but certainly it would not be pretended that a person voluntarily going into bankruptcy could possess himself of property which did not belong to him, or have the title to property claimed by third parties adjudicated to be his, no matter what allegation he might make in his petition or schedule.

The adjudication in bankruptcy, therefore, conclusively determined the status of Griffin as a bankrupt, but did not conclude the defendants from making their defense on a suit by the trustee in bankruptcy against them to recover the property.

In the answer of the defendants no reference is made to other property except that which they claim to have been obtained from them by fraud, and to have been recovered. It appears from the evidence that they received other property also. The question whether in fact there was a rescission for fraud, or whether there was a preference, in view of the entire evidence, was for the jury. The ground of demurrer insisted on should have been sustained. The adjudication in bankruptcy could be pleaded, but the effort to estop the defendants from pleading rescission for fraud can not succeed. True the court charged that the adjudication in bankruptcy did not conclude the defendants except as to the insolvency and proper adjudication of bankruptcy; but the other ruling remained unreversed.

2. Evidence was introduced to show that Griffin made a certain statement to the defendants as a basis of credit, that they extended credit to him, and that subsequently he informed them that such statement was not true in fact and that it did not cor-

rectly give the amount of his indebtedness; and they insist that thereupon they rescinded the sale for fraud, and retook their goods. The court charged as follows: "Certain evidence, gentlemen, has been permitted to go to you as to the alleged statements made by Griffin. . . Any statement made by Griffin, if he made statements, would not be binding upon this plaintiff in this suit as admissions, and such evidence as has been allowed to go to you with reference to the alleged statements of Griffin is to be considered by you exclusively on the question as to whether Griffin was successfully impeached or not, and should not be considered by you as an admission of Griffin's, binding upon the plaintiff in this case." One question in the case was whether, if there was a preference, those receiving it had reasonable cause to believe that a preference was intended. On this branch of the case the statements of Griffin to them were admissible and proper for consideration. They were not, of course, binding or conclusive on the plaintiff, but as bearing on the question of knowledge by the defendants they could be considered; and it restricted the use of this evidence too much to confine it solely to the matter of impeaching Griffin as a witness. The Civil Code, §5176, declares that "When, in a legal investigation, information, conversations, letters and replies, and similar evidence, are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." And section 5179 says: "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible as part of res gestœ. See also McLean v. Clark, 47 Ga. 24; Cook v. Pinkerton, 81 Ga. 89; Cohen v. Parish, 105 Ga. 339; 3 Wigmore on Evidence, §1777.

3. If one purchasing goods makes a false representation as to a material matter, and the owner of the goods relies on such statement and sells, upon discovering the fraud the owner may rescind and reclaim his property, or so much of it as is still in the possession of the purchaser. In order to rescind it is not necessary that the purchaser should consent to a rescission, or make a new contract with the vendor for that purpose. The vendor upon discovering the fraud may elect to rescind or to continue the contract. If he elects to rescind, he must give notice to the purchaser of such election and of his determination to reclaim the

goods sold; and if he has received anything in payment, he must return it or tender it to the purchaser. If, however, the transaction which is claimed on the one hand to have been a rescission, and on the other to have been a preference, was accomplished by consent or agreement between the vendor and purchaser, it is not error for the trial court to submit that fact to the jury to aid them in determining what was the real nature of the transaction. Upon the right of a vendor to rescind upon discovering that he has acted on a false representation in making a sale, see *Clayton* v. *O'Conner*, 29 *Ga.* 687; *Woodruff* v. *Saul*, 70 *Ga.* 271; *E. T., V. & Ga. Ry. Co.* v. *Hayes*, 83 *Ga.* 558; *Newman* v. *Claflin Co.*, 107 *Ga.* 89; *Mashburn* v. *Dannenberg Co.*, 117 *Ga.* 567; 1 Benj. Sales (6th Am. ed.), § 661; 24 Am. & Eng. Enc. L. (2d ed.) 643; 1 Bigelow on Fraud, 76.

4. If a vendor in reliance upon material misrepresentations has made a sale, and has rescinded it on discovery of the fraud, but all of the property sold is not in the possession of the purchaser, and some of it has been sold or disposed of by him so as to be beyond the reach of the vendor, the latter may reclaim all the property which can be recovered. As to that which he can not recover, he may have a right of action against the purchaser, not upon the contract, but based on the theory of the conversion of the goods not found, or an action based upon the contract implied by law where a vendee has disposed of the goods for money and the seller has waived the tort. 2 Mechem on Sales, § 909, and cit.; *Hersey* v. Benedict, 15 Hun, 282; *Sleeper* v. *Davis*, 64 N. H. 56; *Cragg* v. *Arendale*, 113 *Ga.* 181; *Southern Ry. Co.* v. *Born Steel Range Co.*, 122 *Ga.* 658. He can not, however, proceed both under the contract of sale and against it. He can not take back such of the goods as remain on hand as part payment of the indebtedness arising from the contract of sale, and retain a claim or seek payment for the balance of the purchase-price. These two positions would be inconsistent.

5. It is insisted by the defendant in error that the evidence demanded the verdict, and that there should be an affirmance independently of the consideration of any alleged errors on the part of the court. There was undoubtedly ample evidence to have sustained a finding in favor of the plaintiff, but we are not prepared to hold that it so plainly required a verdict for him

that an affirmance must necessarily result. The plaintiff contended that there was not in fact a legal rescission, but that Griffin, being insolvent and about to fail, came to Atlanta and conferred with the defendants for the purpose of giving them a preference; that the matter of rescission, now sought to be set up, was not the real transaction between the parties; that the admission of having made a misstatement was merely colorable; that the defendants took not only their own goods but other goods of Griffin, and that they did not merely seek to reclaim goods on the ground of an alleged fraud, but to get paid for the contract price, crediting the goods received thereon, both those bought from them and others. The defendants claimed that there was a bona fide rescission, and not a preference; that if any goods were received by them in connection with the rescission which were not included in their sale to Griffin, it was a mere accident, and not intentional; and that the receipt of other goods later was a separate and distinct transaction for the purpose of partly compensating them for such of their goods as could not be reclaimed. Of course, any receipt of additional goods in payment would not stand on the basis of a rescission. While the jury might have found a verdict in favor of the plaintiff, we can not hold that it was so clearly demanded as to require an affirmance.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*