HOWARD *v.* GLENN, trustee.

1. Where, upon a bill filed by creditors of an insolvent corporation, a decree was rendered appointing a trustee with authority to sue and collect from the corporators a certain assessment and call made upon them by the decree, the officers or persons representing the corporation being parties defendant to the bill, and the court being one of competent jurisdiction, such decree was binding upon a subscriber to the capital stock of the corporation, though he was a citizen of another State and was not served with process.

(a) An amendment of the charter of the corporation, changing its name from the National Express Company to the National Express and Transportation Company, was not so material as to relieve a subscriber to its capital stock from liability to pay for the same.

2. The decree upon which this suit was instituted having set forth the outstanding creditors for whose benefit it was instituted, a plea that such creditors were not set forth in the present action was insufficient.

3. The corporation having been sued at the instance of creditors and duly served, the defendant in the present action was bound as a corporator by any proceedings in that case, although a citizen of another State, never served with process, did not appear, and had no notice until the institution of the present suit.

4. Fraud between the corporation and the corporator would not defeat an action by creditors of the corporation, nor an action brought by the trustee appointed by the court to collect a corporator's unpaid subscription to the capital stock.

5. That the decree was supplemented with a provision that if the stockholders should pay a certain per cent. upon their subscriptions within a certain time, this should operate as a discharge of such subscriptions, was of no avail to the defendant, because he did not pay or offer to pay the specified percentage.

6. If the defendant became a stockholder of the corporation, though his subscription was induced by fraud, he would be liable to its creditors for so much of his unpaid subscription as, in connection with the amounts due by the other corporators, might be necessary to pay its debts.

7. That the trustee for creditors (the plaintiff) had released several stockholders from liability under the decree, does not release the defendant, unless such action increased his own liability.

8. Fraud practiced upon the stockholder to procure his subscription to stock did not affect the corporation's creditors.

9. It having been admitted by the defendant that he subscribed to fifteen shares of stock in the National Express Company, and it having been proved that that company and the National Express and Transportation Company were one and the same, the books of the corporation were admissible in evidence to show any transaction which had taken place between it and the defendant.

(a) The stock subscription list of the corporation having been admitted in evidence, refusal to allow the defendant to make proof that he did not subscribe thereto was erroneous; but a reversal on this account is not required, as the record shows that the plaintiff was entitled to recover.

10. If one of the defendant's pleas bearing on the main issue in the case contains an admission tending to damage his cause, such admission may be used in evidence against him. Thus, where it was affirmatively alleged in the declaration that the defendant was a subscriber to the stock of the National Express and Transportation Company, and this was the main issue, and if not true called for a clear and explicit denial by the defendant, and his plea denied that he was a subscriber to that company, but admitted that he was a subscriber to another company, and these companies were one and the same, such admission might be used against him.

April 21, 1890;

Corporations. Debtor and creditor. Pleadings. Parties. Judgments. Service. Fraud. Stockholders. Evidence. Admissions. Before Judge RONEY. Richmond superior court. October term, 1889.

The petition of John Glenn, trustee, filed December 13, 1884, alleged that W. H. Howard was indebted to him, as trustee, $450, with interest from December 14, 1880, for the following reasons: Howard subscribed for fifteen shares of stock of the National Express and Transportation Company, a corporation of Virginia, promising to pay for it $100 per share in such instalments and at such times as he might be lawfully called upon; and in consideration of his subscription he was admitted to all the rights of stockholders in the company. On September 20, 1866, the corporation by deed assigned to Hoge, O'Donnell and Kelly, in trust for the benefit of its creditors, all its property, etc., with power and authority to them to reduce to money and collect the property and effects so conveyed, and apply the proceeds to the trust declared by the deed. In a case in the chancery court of the city of Richmond, in which Wright, sheriff of that city, and, as such, administrator of W. W. Glenn, deceased, and others, creditors of the corporation, were complainants, and the corporation, Kelly, Hoge and others, officers of it, were defendants, the court being of competent jurisdiction, it was on December 14, 1880, adjudged and decreed that plaintiff be appointed trustee to execute the trust declared by the deed; that there were a large amount of debts secured by the deed, which remained unpaid and entitled to be paid out of the property conveyed by it; that of the sum of $100 of each share of the stock of the company, promised to be paid by all the subscribers and their assigns therefor, $80 per share had never been called for or required to be paid by the company, and yet remained liable to be so called for and required; and that it was necessary and proper that 30 per cent. of the amount subscribed should be called for. And it was decreed that a call and assessment be made, and the same was made by said decree upon the stock and .

stockholders, of $30 on each share, to be paid to the plaintiff, which decree and the record in said case are to the court shown. Plaintiff complied with the terms of the decree, and was duly qualified to have the rights. conferred and perform the duties required thereby.

The defendant moved to dismiss the declaration, be-. cause (1) it failed to allege that the corporation, prior to commencing business, had its full capital stock sub- scribed ; (2) there was not annexed to it a copy of the: written terms of subscription, so that defendant might. plead anything in defence to this call arising under the: terms of the subscription ; (3) it failed to allege that. the corporation ever engaged in the business for which, it was incorporated ; (4) there were not annexed to it,. copies of the proceedings referred to in it, and copy of the call for the enforcement of which the action was, brought ; (5) the call referred to was illegal, in that calls for payment of stock subscriptions in the corpora-. tion could only be made by it through its board of di-, rectors, and this not having been done, plaintiff was. not entitled to bring suit on the call as made ; and (6). no legal cause of action is set forth. This motion was. overruled. The defendant pleaded as follows :

1. The plaintiff is not a legally appointed trustee of the corporation, nor authorized to institute this action by virtue of his appointment, nor authorized to bring· suit without setting forth the outstanding creditors for: whose benefit the same is instituted.

2. The decree of the chancery court of the city of Richmond of December 14th, 1880, set forth in the petition, was not such a contract of record as is binding· upon him personally for any purpose, in that the court; was without jurisdiction over him as a resident citizen of the State of Georgia, who was never served with process therein, who never appeared or had notice thereof until the institution of this suit.

3. The deed of trust of September 20th, 1866, set forth in the petition, and which the decree of December 14th, 1880, requires should be carried into effect, was fraudulent and void, in that it was made without authority of the stockholders, done only pursuant to a resolution of five directors, a bare quorum, when one of them, the president of the corporation, was also a creditor thereof, and it directed him to execute such an instrument as he deemed equitable, with special regard to the pledges of the company already made to the Bank of Commerce of Baltimore, and the Baltimore and Ohio Railroad Company. At the time it was made the grantor was insolvent, and by it a large benefit was reserved to it, to wit, the power to remain in possession of the business and to receive the income thereof from September 18th, 1866, to November 1st, 1866; and it was made to hinder, delay and defraud creditors, the trustees named therein having participated in the design and acted in accordance therewith. This deed on its face conveyed all the corporate property, wherever situated, within or without the State of Virginia, and expressly referred to all calls and assessments by stockholders.

4. If any decree ever was rendered, as set forth in the petition, December 14th, 1880, the same was superseded and supplemented by a subsequent and further decree of the said court of July 21st, 1883, in and by which it was decreed that John Glenn, trustee, on the payment to him, at any time within six months from the date of the decree, by any subscriber to the stock of the defendant, or by any other person claimed to be liable on account of said stock, of twenty-five per centum, with interest thereon at the rate of six per cent. per annum, within thirty days from that date, the plaintiff should execute a receipt therefor, to operate as a full acquittance and discharge of all persons on account of such

subscriptions, both of the original subscribers thereto
or any assignees thereof. This was a finding that twenty-
five per cent. was sufficient to pay off and discharge all
debts of the company found outstanding against it.
And this defendant, without admitting any liability in
the premises except that he is the person claimed to be
liable on account of the stock, says that the decree of July
21st, 1883, has not since been revoked or annulled, and
that upon information received thereof, he tendered the
said sum, and the same was refused; and he hereby
tenders continuously twenty-five per cent. of the original
amount of the alleged subscription to the said peti-
tioner, with interest thereon at the rate of six per cent.
from August 21st, 1883, and the cost of this suit, and
asks a judgment in his favor relieving him from the
balance of the claim.

5. He at no time became a subscriber to the National
Express and Transportation Company, but did sign a
paper subscribing to the National Express Company
for fifteen shares of the capital stock. This subscription
was induced by fraud, and is void for false and fraud-
ulent representations made, and for the fraudulent sup-
pression of material facts concerning said company.
At the time of said subscription and to induce the
same, and on the faith of which this defendant acted
in making said subscription, it was represented to this
defendant by the agent soliciting subscriptions, that
this company was and had been legally incorporated
under the laws of Virginia, where it was located, and
that the capital stock had been properly and legally
paid up to enable it to do business, when in truth and
in fact this representation was fraudulent, said company
not being legally incorporated nor having any corporate
existence whatever. If he ever was a stockholder in
the National Express and Transportation Company, it
was because of a subscription by him to the National

Express Company, not then in existence, and the delivery without his knowledge and consent of the subscription list to the National Express and Transportation Company when incorporated thereafter. Said National Express and Transportation Company itself never complied with the condition precedent to having corporate capacity, according to the terms of the statute of the State of Virginia in that case made and provided, in the following particulars : (1) The subscribers to the same (if there were any) did not contract to pay two per centum of their subscription at the time of subscription. (2) There was not subscribed to the capital stock of said corporation as such, knowing of its charter and the terms of it, the amount of $500,000 in *bona fide* subscriptions to the same, but the entire subscription was obtained to the National Express Company, another company, under false representations that it was already organized, and without reference to a charter to be obtained, and depends on the ratification of a wrongful diversion of their promises, made by unauthorized persons who, without revealing to said subscribers the existence of said charter, or the terms of it, or the nature of liabilities under it, or the fact that large debts were contracted to be incurred on its organization, or the fact that 900 shares of it, ostensibly paid up but really not paid up, were to be given to the Reid Express Company, fraudulently transferred their subscriptions to the books of said corporation ; and the acceptance of stock by subscribers under such circumstances was no legal or binding ratification. Said company did not enter business with a capital of $100,-000 and no debt, as intended by the statutes of Virginia, but unlawfully began business already involved by the fraudulent contracts before related, of all of which defendant knew nothing, and it was distant from his residence and kept concealed, so that he could not be reasonably charged with knowledge of it.

6. In November, 1865, persons claiming to act on behalf of the National Express Company to solicit subscriptions to the capital stock thereof, falsely and fraudulently represented to defendant, in the county of Richmond and State of Georgia, that said company was already organized and doing business as a corporation, whereas in truth and in fact the said company had no charter; no prospectus was presented to defendant; it was fraudulently concealed from defendant that a charter was to be applied for; it was also kept secret that the self-constituted officers of said National Express Company had, without authority or notice to anybody, bought out a worthless concern in New York, known as the Reid Express Company, and besides $15,000 cash, had agreed to deliver 900 shares of stock (as fully paid up) in the company to be formed as the National Express and Transportation Company. Defendant was not even notified of the kind of charter obtained, and did not authorize the transfer of such subscription as he made, acting on above stated false representations, to said pretended corporation, and never ratified the same; and so defendant says that said subscription was procured from him by fraud, and was and is void; and of this the complainant in said suit had full notice. If defendant ever received any certificates of stock in said corporation, the same were imposed upon him by fraud and concealment of the material facts touching the liabilities of defendant about the same, so that this reception of this stock and payment of assessments thereon (if such were paid) were in ignorance of the real state of affairs, studiously kept concealed by those who forwarded said stock to him, and who pretended to occupy a confidential relation to defendant. Defendant would never have received the stock if he had known of the Reid Express Company transaction, of the waste in the matters of said original company, of

the false representations to obtain said subscriptions, of the fact that such a charter was obtained and had; and said corporation dissolved and ceased to do business in a few months, and defendant never discovered above stated facts until after that, and so had no occasion to repudiate said stock; he never did voluntarily, with any knowledge of the real facts, become a stockholder in said company, and never attended any meetings of stockholders nor took any part in the business of the same, and never knowingly paid any calls, and in no wise held himself out to plaintiff or stockholders to induce them to credit said corporation, and they, said plaintiffs, did not in fact credit said corporation on the faith of any liability of defendant.

7. Since the date of the alleged subscription, the plaintiff has compromised, settled and released from all liability under the said decree of December 14, 1880, numerous stockholders, and particularly the estate of Joshua K. Evans, who was a resident of this county, by the payment of the sum of ——— dollars. This action of plaintiff released the estate of said Evans from its subscription, and reduced the capital stock materially. This was done without the knowledge or consent of defendant, and his subscription cannot be enforced against him; and this action materially increased his liability, and he is discharged thereby.

8. By reason of recoveries, compromises and settlements against and with various stockholders in the National Express and Transportation Company, the plaintiff has received more than sufficient funds to pay off all creditors against the said company, and he is not now entitled to recover from defendant any assessment made by the decree specified in his complaint. All the creditors are paid; and this defendant's subscription to the National Express Company having been obtained by fraud, as set out in his plea to that effect, to which

he refers and makes a part of this plea, this defendant should be discharged.

9. In order to compel the plaintiff to come to a just and true account with defendant, he pleads and asks the equitable intervention of the court, and refers to all his several pleas and pleads the same as a whole, and asks to be protected in the premises.

On demurrer, the court struck so much of the first of these pleas as stated that plaintiff was not authorized to bring suit without setting forth the creditors for whose benefit the same was brought; all of the second, third and fourth pleas; all of the fifth plea, except that part stating that plaintiff was never a subscriber to the National Express and Transportation Company, but did sign a paper subscribing for fifteen shares in the National Express Company; and all the remaining pleas.

The plaintiff introduced the transcript of the record referred to in the declaration. It contains, among other things, a copy of the act of the legislature of Virginia passed December 12, 1865, incorporating certain persons named as the National Express and Transportation Company, providing, among other things, that the capital stock of the company should be $5,000,000, and that the company might commence business as soon as one third of its capital stock was subscribed, and $100,-000 paid up. Also an amendment to this act, passed six days later, providing that the principal office of the company should be kept at Richmond, Virginia, unless it were removed to some other place in Virginia by order of the stockholders in general meeting.

One Smoot testified for the plaintiff, in brief, as follows: Was employed by the National Express and Transportation Company in 1866, and the books of that company were kept in his office in Baltimore. He saw them at that time; and when a receiver was appointed for the company after its failure, he appointed witness

to take charge of all the books.     This was in the latter part of December, 1866, and witness retained them until July, 1868, at which time he delivered them to the attorney of the trustee under the assignment. From these facts he knows the identity of the books; he also had all the subscription lists except one, the New York list. He identified the books produced by counsel, hereafter referred to, as the original stock-ledger of the corporation, its minute-book, and the treasurer's blotters. These books were kept by Allen, secretary and treasurer of the corporation, and by his clerk, Mills. The hand-writing of the record-book of the executive committee is that of J. T. Moore, of Richmond, who it appears was one of the secretaries or secretaries *pro tem.* of the company.   Witness also recognized the scrip-book, the original certificate-book, now containing only stubs of certain certificates, with the book of the official certifi-cates when the stock was transferred and the old certifi-cates cancelled; also the book for transferring the stock, which was largely kept by Mills; also the list of original subscribers to the stock of the National Express Company, as one of the papers that originally belonged to the company.   What is on the stubs of the original book, which contains stubs of certificates of stock heretofore mentioned, is in the handwriting of Mills, except the signature receipting for the stock certificate.   Witness knows nothing about that signa-ture; it was there when the books were turned over to him in 1866.   The entries on the stock-ledger showing payments on account of W. H. Howard are in the handwriting of Allen.   The entry of ten per cent. on fifteen shares is in the handwriting of Allen, and also the entry on the blotter.   Witness has received pay-ment of his claim as a creditor of the corporation, and did not compromise it.   He had no connection with the principal office at Richmond.   The books were turned

over to him in Baltimore, and from his knowledge of
them prior to that time he could identify the main
ledger from what he saw of it in Baltimore. The sub-
scription list, which he had testified to as an original
paper, came from the trustees, and looks like a series
of papers pasted together because one piece was not
long enough to contain all the names of subscribers.
He has no doubt this subscription list contains the
original names. It was then the National Express
Company, though witness does not know that there was
ever such a company. Witness's expenses are paid by
plaintiff, though he has no *subpœna* and has just ap-
peared through courtesy. The first class of preferred
creditors of the company have been paid, but the
second class have not, nor have the general creditors
been paid in full. The witness then testified as to cer-
tain specific claims which had been paid only in part.
He did not know how many claims had been com-
promised at twenty-five cents on the dollar. The
creditors plaintiff is seeking to pay are the holders of
claims against the company, so far as he knows. Has
tried to aid plaintiff and his attorney to get the money
for the creditors, but is not in their employment.

The plaintiff offered in evidence the minute-books
proved by Smoot, to show the identity of the National
Express Company and the National Express and Trans-
portation Company. The extracts offered were as
follows: (1) Proceedings of meeting of citizens in
Richmond on September 18 and 19, 1865, for the pur-
pose of organization. The object of the meeting was,
to organize a National Express Company, and the sub-
scriptions to shares of stock before the meeting of
September 18 adjourned, amounted to $154,300. From
the minutes of September 19 it appears that it was
resolved, among other things, that the operations of
the National Express Company should commence as

soon after $250,000 should have been subscribed and
five per cent. thereof paid in, as the law would author-
ize; that a committee be appointed to memorialize the
General Assembly of Virginia to pass an act increasing
the stock to $5,000,000, for a change in the corporate
name of the company, etc.; that commissioners be
appointed in each State to open books of subscription
to the stock of the company; and that a meeting of
stockholders should be held under the provisions of
law, and an executive committee should be appointed,
who should be charged with all such acts as might be
necessary to a proper organization of the company;
and such committee was appointed. (2) Meeting of
the executive committee of the National Express Com-
pany of September 20, 1865, and October 12 and 14,
1865, at which steps were taken to obtain subscriptions to
stock, and to obtain a merging of Reid's Express Com-
pany into the National Express Company. Commis-
sioners were appointed to visit certain cities, Augusta
being among them, to open books of subscription, col-
lecting one per cent. at the time of subscription; and a
general meeting of stockholders was called for October
30, 1865. (3) At the meeting just mentioned, a resolu-
tion was adopted to ascertain the amount of stock sub-
scribed and the amount paid thereon, etc. (4) Proceed-
ings of the executive committee of October 31, 1865.
It met in conformity to a resolution adopted by the
stockholders' meeting the day before, and agreed to
recommend the next day as the proper time to elect
nine directors, and to recommend that the name of the
association be changed to the National Express and
Transportation Company; and it was resolved that the
books of subscription be closed, subject to a further re-
port from the committee, etc. (5) Proceedings of the
stockholders' meeting of October 31, 1865, from which
it appeared that the chairman of the executive commit-

tee reported a series of resolutions, which were adopted and also a statement showing list of stockholders and recapitulation of votes, which showed that, up to the time the report was made, stock to the amount of $3,-551,200 had been taken, and that the number of votes was 12,158 ; that the meeting then proceeded to elect a board of directors, their names being stated, and a president was also selected by the board of directors with the approval of the stockholders ; and that the board of directors were requested to apply to the General Assembly of Virginia for such alterations in the charter under which the association had been organized, as might be required by the action of the stockholders, and in other respects as might be deemed expedient by the directors. (6) Meeting of directors of November 3, 1865. These minutes are headed "Office of the National Express & Transportation Co."; and at this meeting a resolution was adopted looking to the purchase of Reid's Express Co. by the National Express and Transportation Co. by issuing to Reid & Co. certificate of full paid stock for $90,000, etc. (7) Meeting of the stockholders of the National Express and Transportation Company of January 16, 1866. The chairman selected stated that the object of the meeting was for the purpose of organizing under the amended charter passed by the General Assembly of Virginia, December 12, 1865; that by request of a stockholder, the secretary read to the meeting the charter as amended; that the treasurer *pro tem.* informed the meeting that $4,329,100 had been subscribed to the capital stock of the company, and $173,687 were paid in; and that the provisional board of directors, which appears to have been the board elected at the stockholders' meeting of October 31, 1865, were elected directors for one year.

The defendant objected to this evidence, on the

ground that it it did not appear that any majority of the stockholders were present at the meeting of January 16, 1866, nor who were present, nor that that meeting was held in conformity with the charter or the law of Virginia. The objection was overruled.

The plaintiff then offered, of the books proved by Smoot, the stock-ledger, on which the name of defendant appeared as a stockholder, the entry on the stub in the certificate-book of certain scrip, and entries of collection on the treasurer's blotters. From these it appeared that defendant was a subscriber for fifteen shares, which were issued to him on May 11, 1866, and the certificate therefor receipted for by him at Augusta, Georgia, on August 10, 1866, and that he paid on the stock $300, the last of his payments being made September 8, 1866, these payments amounting to and being made as payments of twenty per cent* on the fifteen shares. Defendant objected to this evidence, on the grounds that these were private papers kept by the company for its own protection, that it was secondary evidence, and that the parties who made the entries or received the money from defendant, should have been examined as witnesses to prove the fact, and were not shown to be dead. The objection was overruled.

The plaintiff then offered the subscription list proved by Smoot, and with it that portion of the amendatory plea not stricken, in which defendant stated that he had at no time become a subscriber to the National Express and Transportation Company, but that he did sign a paper subscribing to the National Express Company for fifteen shares of the capital stock. This subscription list was headed, "Subscription list to the stock of the National Express Co." It bound the subscribers for the amount and number of shares opposite their names, in the stock of the National Express Company, and to pay the amount in such instalments as might be

called for by said company, and to pay one per cent. at the time of subscription. Among the last of the names upon it is that of the defendant for fifteen shares, $1,500. He objected to its admission, on the grounds that there was no sufficient identification of it, that it had various sheets pasted on it, upon one of which and near the extreme end of the list defendant's name appeared, that it showed that each and every other person had made a payment [the list as sent up in the record does not show this], but the defendant had not; and that the portion of the plea offered was not admissible to identify this paper, or for any purpose, unless the entire plea was offered as explanatory of the portion that had not been stricken. The court admitted the list. The plaintiff then put in evidence the statute of Virginia that "Upon every subscription for shares in any joint stock company, there shall be paid upon each share $2.00 at the time of subscribing therefor, as required by the president and directors," and closed.

The defendant offered testimony tending to show that the signature purporting to be that of himself upon the original stock subscription list, was not his signature, nor was the signature to the receipt for stock-scrip upon the stub of the certificate-book. One of the witnesses said that the signature to the receipt looked like that of a son of defendant now dead, who was a partner in his father's business of W. H. Howard & Sons, and the boys generally signed the firm name; this son was also named W. H. Howard. Defendant also offered a witness to prove that the signature purporting to be the signature of this witness upon the original subscription list, was not a genuine signature; the object being to put in issue before the jury the genuineness of the paper, and to rebut the presumption of its genuineness, arising from its having come from the possession of the company. On objection, the court refused to admit this

testimony, unless the witness would swear that it was not the original subscription list. Counsel for defendant stated that he wished to rebut the effect of the testimony admitting the paper, by showing by this witness that the company kept incorrect books, by proof from this witness that, though his name appeared upon the original subscription list, he never did put it there nor authorize any one else to do so; but the court rejected the testimony, holding that the list might be the original one, although the witness's signature was not genuine. The witness was then shown to be an expert in handwriting, and was asked whether from his experience as an expert a large majority of the signatures appearing upon the paper were not written by the same hand. Objection to this also was sustained. The witness was asked whether from an inspection of the paper he was ready to say that that was the paper he signed. Objection sustained. He was then asked to inspect the paper, and after such inspection, was asked if he could say whether or not that was the original subscription list. The court then asked the witness if he had seen the Augusta list, and upon his replying "no," declined to allow the defendant to show by this witness that it was not the original subscription list because what purported to be the signature of the witness thereto was not genuine, holding that there being forged names on it would not prevent its being the original list; but that if the witness could show that the paper was not the original paper, he would be allowed to do so.

The defendant offered the decree of the court of chancery for the city of Richmond of July 21, 1883, authorizing the release of all the stockholders upon payment of twenty-five per cent. of the original amount of their subscriptions, provided payments were made to Glenn, trustee, within thirty days; and then put in evi-

dence extracts from the meetings of the board of directors of the National Express and Transportation Company of November 1, 1865, showing that a proposition from Reid & Company to transfer to the National Express and Transportation Company all the property and business of the Reid Express Company for $15,000 in cash and $90,000 in full paid up stock, was agreed to.

In rebuttal, the plaintiff introduced the decree of the circuit court of the county of Henrico, Virginia, dated December 9, 1884, in the case of Glenn, administrator, and others, against the National Express and Transportation Company and others, reciting that it appeared to the court that certain stockholders who had filed petitions therein for a rehearing of the decree of December 14, 1880, and upon which the order of July 21, 1883, was entered, had accepted the terms thereof. It was therefore decreed that these petitions be dismissed, and that Glenn, trustee, be directed to proceed to execute the decree of December 14, 1880 (entered by the chancery court of the city of Richmond, from which court this cause had been transferred to this court according to law), as if the order of July 21, 1883, had never been entered.

At the plaintiff's request the court charged as follows:  (a) The admission contained in the plea of the defendant, that he subscribed for fifteen shares of the capital stock of the National Express Company, is not affected by the further statement of said plea that his said subscription was obtained by fraud, if the jury find that the defendant became a stockholder of the National Express and Transportation Company in the manner set forth in the above charge.  (b) The non-payment by the defendant of the sum of two dollars per share at the time of subscription does not affect the liability of the defendant, if the jury find that he became a stockholder under the first charge.  (c) It is

not necessary, for a party to be held to be a subscriber to the stock of a company, that he should be proved to have signed the subscription list. A payment of calls, receipt of a certificate of stock, or other acts as a member of a company, will suffice to show a party is a subscriber to the stock.

The court refused defendant's request to charge as follows: (*a*) If it appears from the evidence of plaintiff that subscriptions were made under the act of March 22, 1861, of the legislature of Virginia, and that this act was not placed in evidence by the plaintiff, but defendant is claimed to be liable under a subsequent statute passed after the subscription, the court cannot pass upon the question of alteration, and plaintiff should not recover. (*b*) The fact that a subscriber pays his assessment to have a route surveyed is not sufficient to show acquiescence in the progress of the work, so that he cannot afterwards object for a failure to get subscribers to the whole stock, or to a material amendment to the charter. (*c*) The question of acquiescence on the part of a stockholder is one for the jury; and because a stockholder pays his assessment to have a route surveyed, it is not sufficient to show acquiescence, so as not to prevent him from afterwards objecting on account of a failure to obtain subscribers to the whole stock, or a material amendment to the charter. (*d*) Where the fact of being a stockholder is denied and at issue before the jury, there is no presumption against an alleged stockholder from entries of payment on an account against him on a stock-ledger as that of the corporation. (*e*) If the jury find that a material alteration was made in the terms of subscription, by change of name of the corporation, or the amount of capital to be invested, defendant is discharged, unless he ratified the same with knowledge thereof. (*f*) To bind one by ratification for an illegal or

void act, it must be shown that he had full knowledge at the time of the alleged ratification of the facts that would make such an act illegal or void; and the burden of proving a ratification is upon the party asserting it. (g) Where a plea is filed by the defendant and a portion thereof stricken on demurrer of the plaintiff, the balance remaining unstricken cannot be taken by the jury against him without consideration of the portion of the plea so stricken.

In setting forth the issue between the parties, the court charged: "The decree and the records of the company further show that the company first organized under the name of the National Express Company, but, upon application of the company, the charter was obtained in the name of the National Express and Transportation Company. Then the decree and record evidence establishes the National Express Company and the National Express and Transportation Company are the same."

Referring to the plea that the defendant was not a subscriber to stock in the National Express and Transportation Company, the court charged: "To show that the defendant was a stockholder, the plaintiff has offered in evidence a paper they claim to be the original subscription list, entries upon the minutes, and books of the company, showing a payment of one assessment, and admission in plea of defendant. The National Express Company and the National Express and Transportation Company being the same, if the defendant originally subscribed as a stockholder to the National Express Company, then he is liable under this suit."

The jury found for the plaintiff the amount sued for, with interest; and judgment was entered accordingly.

The defendant excepted to the rulings of the court above indicated, in overruling the motion to dismiss

the declaration, in striking the pleas, in the admission and rejection of evidence, and in the charge to the jury and the refusal of requests to charge.

F. H. MILLER and W. K. MILLER, for plaintiff in error.

CALHOUN, KING & SPALDING and C. H. COHEN, *contra.*

BLANDFORD, Justice.

At the appearance term the defendant filed a motion to dismiss the plaintiff's declaration, on the ground that he failed to annex a copy of the written terms of subscription, and copies of the proceedings referred to in his declaration, with a copy of the call for the enforcement of which this action was brought. Subject to this motion the defendant pleaded (1) that the National Express and Transportation Company was not, on the 14th day of December, 1880, a body politic and corporate as alleged in the plaintiff's declaration; (2) that the plaintiff is not a legally appointed trustee and authorized to institute this action by virtue of his appointment; (3) that if the defendant ever subscribed to stock, it was to the National Express Company, whose charter was amended without the knowledge or sanction of this defendant; (4, 5 and 6) the statute of limitations. When this case came on to be tried, the court ordered these pleas stricken, and overruled the motion to dismiss the plaintiff's declaration.

1. In our opinion, the plaintiff's declaration set forth a cause of action against the defendant. The declaration substantially alleged that Howard was a subscriber to the National Express and Transportation Company for fifteen shares of its capital stock, amounting to the sum of $1,500.00; that this company, having become insolvent, made an assignment to certain persons as trustees; that certain creditors of this company filed a bill in the city court of Richmond, upon which there was a

decree rendered, praying that the defendant in error, Glenn, should be appointed a trustee with authority to sue and collect from the corporators of the National Express and Transportation Company a certain assessment and call made upon them by the decree of that court. The officers or persons representing the National Express and Transportation Company were made parties defendant to that bill. We think, so far as Howard had any interest in this company, that he was represented by the corporation in that case, and that he was bound by the decree rendered in the same (it being rendered by a court of competent jurisdiction), notwithstanding that Howard may at the time have been a citizen of Georgia, and may not have been served with any process in that case. So we think the court did right to overrule the demurrer of defendant to the plaintiff's declaration. We think, also, that the pleas 1st, 2d and 3d, and 4th, 5th and 6th, were properly dismissed on demurrer by the court. We think that Glenn was duly appointed a trustee, and as such had a right to bring this suit; and that if the defendant subscribed to stock in the National Express Company, although the charter may have been amended without his knowledge or sanction so as to make it the National Express and Transportation Company, this did not relieve the defendant from any liability to pay up his unpaid stock, this not being such a material alteration of the charter as would relieve the defendant, Howard. And this court held in 81 *Ga.* 383, in this same case, that the statute of limitations did not apply to the same.

2. We think there was no error of the court in holding that the first plea of the defendant in this case was insufficient, in that it alleged that the action brought by the plaintiff did not set forth the outstanding creditors for whose benefit the same was instituted, the decree of the court in Virginia having set forth such creditors;

and we hold that that decree was binding on the defendant, Howard, as to all matters therein contained, if he was a corporator in the National Express and Transportation Company.

3. It is alleged as error that the court erred in striking the second plea of defendant, that the decree of the chancery court of the city of Richmond of December 14, 1880, set forth in the petition, was not such a contract of record as was binding upon him personally for any purpose, in that the court was without jurisdiction over him as a resident citizen of the State of Georgia, who was never served with process therein, who never appeared, or had notice thereof until the institution of this suit. We think that when the corporation was sued at the instance of creditors, and was duly served, Howard was bound as a corporator by any proceedings in that case, and that there was no error in striking the second plea.

4. We think the third plea was also properly stricken by the court, inasmuch as we think that whatever fraud may have been committed by the corporation would not operate to defeat an action by the creditors of the corporation, however it might be as between the corporation and a corporator. Persons who gave credit to this corporation would not be bound by any fraud between the corporation and the corporators. As between the corporation and a corporator, such defence may or may not have been good; but as between a trustee appointed by a court to bring suit and collect the unpaid subscriptions of a corporator, no such defence could be made.

5. We think the fourth plea was properly stricken on demurrer, in this: that while it alleged the decree of the court in this case in Virginia, to the effect that if the stockholders should pay a certain per cent. upon their subscriptions within a certain time, this would be

sufficient to pay off the indebtedness of the company, the plea did not allege that there was any tender or offer on the part of defendant to pay under that decree, within the time therein prescribed, the amount prescribed to be paid. To avail himself of that decree, the defendant should have paid, or have offered to pay, the amounts specified in the decree. No such allegation appears in this plea, and therefore it was properly stricken.

6. It is complained that the court erred in striking the fifth plea, or so much thereof as alleged that the subscription was induced by fraud, and is void for false and fraudulent representations made, and for the fraudulent suppression of material facts concerning said company; the court allowing the words to stand in said plea: that defendant at no time became a subscriber to the National Express and Transportation Company; that he did sign a paper subscribing to the National Express Company for fifteen shares of the capital stock. Whether Howard became a stockholder in this company by subscription which was induced by fraud practiced upon him, or not, if he did become a stockholder in said company, he is liable to the creditors of the company for so much of his unpaid stock as might be necessary to pay the company's debts, taken in connection with the other corporators of the company. And whether fraud was practiced upon him or not, would make no difference as to the creditors; it would be a question between him and the corporation, with which the creditors had nothing to do. So we think the court committed no error in striking that portion of the fifth plea complained of. We think the sixth plea was properly stricken for the reasons stated in justification of the court in striking a portion of the fifth plea.

7. In the seventh plea, which was also stricken by the court, it is alleged that the plaintiff had settled with

and released from liability several stockholders under said decree, and defendant contends that this is equivalent to a release of himself. We think the court properly struck this plea. The defendant is bound to the creditors upon his subscription to the capital stock of this company, and whether other stockholders were released or not, is a matter with which he has no concern, unless this action on the part of the creditors or their agent increased his liability.

8. For the same reason we think the court was right in striking the eighth plea, which is complained of; and also the ninth plea. When the plaintiff below showed that he had been duly appointed a trustee, by a court having competent jurisdiction, to recover of the stockholders of this company their unpaid subscriptions, for the purpose of paying off the creditors of the corporation; and when the plaintiff showed that defendant was a stockholder and had subscribed so many shares to the capital stock of this company, and that the court had made an assessment upon the stockholders for a certain per cent. upon the stock subscribed, and authorized him to sue and collect the same, we think he made out a case which entitled him to recover, notwithstanding any fraud which might have been practiced upon the stockholder to procure his subscription to the capital stock of this company by the corporation or its agents. Fraud thus practiced upon the subscriber was a matter which did not affect the creditors of the corporation.

The great question in this case is whether the defendant, Howard, who is now the plaintiff in error, was a corporator and a subscriber to the capital stock of this company. He admits by his plea that he did subscribe to fifteen shares of the capital stock of the National Express Company; and it was shown by the evidence introduced by the plaintiff in the court below that the National Express Company and the National Express

and Transportation Company were one and the same. A mere change in the name of a corporation we do not think makes any material difference, clearly not such a difference as would relieve a subscriber from liability to pay for stock subscribed by him.

9. It is insisted that the court erred in allowing the books of the corporation to be put in evidence for the purpose of showing that the defendant did subscribe to fifteen shares of stock, and to show also certain other things therein contained. When it was shown that the defendant was a stockholder in the company, then the books of the company were admissible in evidence against him. But when this fact is not shown, we are of the opinion that the books of the company would not be admissible in evidence against him. In this case, however, it was admitted by the plaintiff in error that he did subscribe to so many shares of stock in the National Express Company; so when it was proved that the National Express Company and the National Express and Transportation Company were one and the same corporation, we think the books were admissible in evidence, not only to show that Howard was a stockholder, the number of shares and the value thereof he subscribed for, but to show any other transaction that had taken place between him and this company. We are aware that it has been held that the books of a corporation are admissible to show *prima facie* that the defendant was a subscriber to the stock of the company, and was a stockholder therein; but while we do not think this ruling is correct upon any reason or principle known to us, yet, under the facts of this case, we think the books were properly admitted in evidence. We know of no decision, however, which shows upon principle that such books are admissible without some special circumstance. We do not think that the case of Turnbull *v.* Payson, 95 U. S. 418, a decision by Judge Clifford to

the effect that the books of a corporation are admissible in evidence to show that a person is a stockholder, is correct. No reason is assigned in that decision, and none has been assigned in any decision which we have been able to find in either North Carolina or Alabama. But we think under the facts of this case, where the defendant admitted that he was a subscriber to the stock of the National Express Company, and where it was shown that the National Express Company and the National Express and Transportation Company were one and the same thing, that the books were properly admitted. We think, furthermore, that when the subscription list was tendered, and admitted in evidence by the court below, the plaintiff in error had a right to show that he did not subscribe to this list; and therefore think the court committed error in refusing to allow him to make such proof. Yet we do not think this is reversible error, inasmuch as it appears from the record, without more, that the plaintiff had a right to recover in this case. So, upon considering this case, we are of the opinion that there was no material error committed by the court below, and that the finding of the jury was right under the facts in proof.

10. It is contended by the plaintiff in error that the admission in the fifth plea, to the effect that he had never subscribed to the National Express and Transportation Company, but that he did subscribe fifteen shares to the National Express Company, could not be used as an admission against him upon the trial of any other plea than that; and the case of Glenn *v.* Sumner, 132 U. S. 156, is cited as authority to sustain this position. In the present case the main issue was, whether the plaintiff in error was a subscriber to the stock of the National Express and Transportation Company. It was affirmatively alleged in the declaration that he was; and if he was such subscriber, his liability

under the facts of the case was clear and unmistakable. We think this allegation in the plaintiff's declaration, that he was such subscriber, called forth from him a clear and explicit denial of the same by a plea of *non est factum*, as was strongly hinted at by the Supreme Court of this State in the case of *Thornton* v. *Lane*, 11 *Ga.* 489. This was the main issue in the case, and without a determination of the same against the plaintiff, the plaintiff was entitled to judgment. So we think that a plea which denies that the defendant was a subscriber to this company, but which at the same time admits that he was a subscriber to another company (which two companies were one and the same), was evidence against the defendant (now plaintiff in error) and might be so used as an admission. While we admit that under the laws of this State a defendant may file as many contradictory pleas as he thinks proper, yet if one of those pleas bears on the main issue in the case, and there be an admission in the same by the defendant which is calculated to damage his cause, that admission may be used in evidence against him. In fact, the only issue to be determined by the jury in this case was whether Howard became a subscriber and stockholder in this company, and any plea which bore upon that issue, and which contained admissions by the defendant, could be used against him. So we think that in the case of *Glenn* v. *Sumner*, *supra*, what was said by the judge in delivering the opinion therein, to the effect that statements made for the purpose of presenting the issue to which they relate are not evidence upon any other issue in the same record, does not apply to this case.　　　*Judgment affirmed.*