## CHAPPELL *v.* LOWE, trustee, *et al.*

1. The incorporators organized under a charter granted by the superior court, before the minimum capital stock had been subscribed for, solicited subscriptions to the capital stock, and began to transact business. Subscriptions for stock were accepted on applications addressed to the corporation. Credit was extended the corporation on the faith of the validity of the stock subscriptions. The company became insolvent and was adjudicated a bankrupt, and a trustee in bankruptcy was appointed, who brought suit for the unpaid stock subscriptions. *Held,* to be no defense to the subscribers that the corporation was organized and transacted business before its minimum capital stock was subscribed for.

2. The cause of action was one against subscribers to stock for the unpaid subscriptions, and was not multifarious.

3. Unpaid stock subscriptions are corporate assets, and a trust fund for creditors. A trustee in bankruptcy of the insolvent corporation may maintain a joint equitable action against all the subscribers, though not all may reside in the same county, to recover so much of the unpaid stock subscriptions as may be necessary to pay the debts of the corporation.

4. The judgment of the district court of the United States, adjudicating a corporation to be a bankrupt, can not be collaterally attacked by showing that the corporation was defectively organized.

August 21, 1916.

Equitable petition. Before Judge Bell. Fulton superior court. July 13, 1915.

On May 5, 1910, a charter was obtained for the incorporation of the Primo Motor Company, with a minimum capital stock of $200,000. On May 7 the charter was accepted by the corporators at a meeting at which $17,000 of the subscribed stock was represented. The corporators at that meeting subscribed for certain shares of stock, but have never paid for them. On July 18, 1910, stock certificates in the amount of $2,000 were issued to each of the incorporators for alleged services rendered in the organization of the company. During the months of June, July, and August, 1910, other subscriptions were received to the capital stock. These were in the form of an application addressed to the Primo Motor Company, wherein the applicant stated that he subscribed for a designated number of shares of the capital stock of the company at $50 per share, and agreed to pay a stated amount in cash, the balance to be paid in stated installments, for which the applicant had given notes. The notes were payable to the order of the Primo Motor Company, their amounts and the dates of their maturity being stated in the application; and each contained the stipulation: "This note is one of a series of————given for the stock in said company, said stock not to be delivered until fully paid for." The total amount of all subscriptions was $130,-000, which was less than the minimum capital named in the charter. About one half of the stock subscribed for was actually paid in. Shortly after the corporators accepted the charter the corporation proceeded to do business, and contracted debts. An item of this indebtedness is $22,500 for money borrowed from G. A. Speer in the latter part of August, 1911; J. F. Askew and I. D. Crawford being sureties on this loan. On May 3, 1912, the Primo Motor Company was adjudicated a bankrupt on the ground of insolvency. The bankrupt's trustee filed a petition against the subscribers to stock, to recover for unpaid subscriptions. All subscribers who had not paid up their subscriptions to stock were made parties, including those who gave their notes in connection with their applications for stock, as above set forth. In addition to the foregoing facts, it was alleged that the bankrupt's estate had been administered in the bankruptcy court, and that all of its tangible assets had been converted into money, which had been applied

towards the expenses of administration, and to the payments of dividends to creditors. The total proved liabilities of the bankrupt and the proceeds of the sale of the bankrupt's assets were alleged, leaving a deficiency to creditors of more than $40,000. The credit extended by Speer to the corporation and the contract of suretyship by Askew and Crawford were upon the faith of the validity of the various subscriptions to the capital stock, which were made before the extension of this credit. In order to indemnify the sureties on this loan the bankrupt assigned to them as collateral security certain amounts due to it for stock subscriptions, which subscriptions were evidenced by promissory notes, copies of which were attached. On petition to the bankruptcy court by the sureties the referee had granted an order requiring the trustee to collect all amounts due on stock subscriptions; in the petition for such order the sureties disclaimed any right to collect the subscriptions by individual actions. It was alleged that the trustee was the owner and holder of all subscription contracts and notes, which were in his possession and were assets of the bankrupt; that some of the defendants were insolvent; and that an equitable accounting was necessary to determine what amount each defendant should pay on his unpaid subscription. Some of the defendants resided in Fulton county, where the petition was filed, and some in other counties. One of the defendants residing out of Fulton ocunty demurred to the petition, and to the overruling of his demurrer he excepted.

*Atkinson & Born, Owens Johnson,* and *W. W. Visanska,* for plaintiff in error.

*Dillon & Burress, Dorsey, Brewster, Howell & Heyman, Napier, Wright & Cox, King & Spalding,* and *Walter R. Brown,* contra.

Evans, P. J. (After stating the foregoing facts.)

1. The applicants for the charter of the Primo Motor Company, immediately on the grant of the charter, held a meeting, accepted the charter, and elected officers. At that meeting only $17,000 of stock was represented, and the minimum stock had not been subscribed for. The corporation was illegally organized; nevertheless they proceeded to do business, and to solicit subscriptions to stock. Among others who subscribed after organization was the demurrant. He signed an application addressed to the Primo Motor Company, subscribing for stock, and promising to

pay for the same in installments represented by notes payable to the order of the Primo Motor Company. He dealt with the Primo Motor Company as a distinct entity. After his subscription was made, the Primo Motor Company continued to do business until its bankruptcy, a period of about twenty months, without dissent or objection from the subscribers to stock. The creditors of the Primo Motor Company dealt with it as a legally organized corporation, and upon the faith of the validity of the stock subscriptions. It is clear that the Primo Motor Company is estopped from denying its corporate existence as against creditors who dealt with it as such, and all of its corporate assets are liable to creditors. But the demurrant denies that his unpaid subscription is a corporate asset, because the company was illegally organized, on account of the failure to procure subscriptions to the extent of its minimum capital stock. Creditors dealing with the corporation had a right to presume that the requisite amount of stock had been subscribed. The fact alone of the commencement of business created that presumption. *Hill* v. *Silvey,* 81 *Ga.* 500 (8 S. E. 808, 3 L. R. A. 150). If the subscriber had paid his stock subscription, he would not have been entitled to have it paid back, to the loss of creditors who dealt with the corporation on the faith that it was legally organized. There is no material difference between the actual payment of the stock subscription and the stockholder's liability therefor, relatively to creditors of the corporation. Creditors and subscribers to the stock dealt with the corporation as a legally organized entity, and the latter on the faith of the validity of the subscriber's obligation to pay for stock subscribed for; and after insolvency of the corporation, whether it was a de jure or de facto corporation (see *Burns* v. *Beck,* 83 *Ga.* 471, 492, 10 S. E. 121), the subscriber will be estopped to deny his liability for unpaid stock subscription as a corporate asset, because of an irregularity or illegality in the organization of the company. *Georgia So. R. Co.* v. *Mercantile Trust Co.,* 94 *Ga.* 306, 314 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153). It may have been a fraud on this stockholder for the illegally organized corporation to solicit subscriptions for stock in the name of the corporation. But persons who gave credit to the corporation on the faith of the subscription would not be affected by any fraud between the corporation and the subscribers to stock; and

such a defense can not be interposed to a suit brought by a trustee in bankruptcy to collect unpaid subscriptions. *Howard* v. *Glenn*, 85 *Ga.* 238 (4), 242 (11 S. E. 610, 21 Am. St. R. 156).

2. The cause of action is one against subscribers to stock, for the unpaid subscriptions. The pleader expressly disclaims that the action is predicated on Civil Code (1910) § 2220, which imposes a liability to creditors on persons who organize a company and transact business in its name before the minimum capital stock has been subscribed for. Nor is it a suit on the notes which the subscribers gave contemporaneously with their stock subscriptions. The notes are alleged to be in the possession of the plaintiff, and in the decree the defendants can be protected against them. The notes state in their body that they are not accepted as payment. They are only evidence of the debt; and under the allegations of the petition the defendants were not sought to be made liable on them as an independent cause of action. The transaction relating to the pledge of the subscriptions and notes to secure the sureties does not militate against the trustee's right to sue, because there was a surrender of the right of action to him, which was approved by the referee in bankruptcy. The petition was not multifarious as containing more than one cause of action.

3.. The assets of an insolvent corporation are a trust fund for creditors. This is true whether the corporation be de jure or de facto. Where the unpaid stock subscriptions to a corporation organized before the minimum capital stock is subscribed for become corporate assets, as set out in the first division of this opinion, equity will compel the payment of a sufficient per cent. of the unpaid stock subscribed to pay the debts of the corporation; and where a trustee has been appointed by the bankruptcy court for the insolvent corporation, such trustee may sue the subscribers in one action, though not all the subscribers reside in the same county. *Dalton &c. R. Co.* v. *McDaniel*, 56 *Ga.* 191, 195; *Moore* v. *Ripley*, 106 *Ga.* 556 (32 S. E. 647); *Allen* v. *Grant*, 122 *Ga.* 552 (50 S. E. 494); *Spratlin* v. *Westbrook*, 140 *Ga.* 625 (79 S. E. 536); *Carlisle* v. *Ottley*, 143 *Ga.* 797 (85 S. E. 1010). On examination and review of these authorities we decline to overrule them.

4. One ground of the demurrer raises the point that, as the minimum capital stock had never been subscribed for, the Primo Motor Company, though contracting business as a corporation, had

no legal status as such, and could not be adjudicated a bankrupt. The Primo Motor Company was proceeded against in bankruptcy as a corporation, and as such was adjudicated a bankrupt, and a trustee in bankruptcy was appointed for it. The judgment of the district court of the United States, adjudicating the corporation a bankrupt, can not be collaterally attacked by showing that the corporation was defectively organized. 5 Cyc. 317. "An adjudication in bankruptcy is in the nature of a proceeding in rem, and the adjudication is in the nature of a decree in rem so far as it fixes the status of the defendant in the proceeding as a bankrupt." *Silvey* v. *Tift,* 123 *Ga.* 804, 807 (51 S. E. 748, 1 L. R. A. (N. S.) 386). Such judgments fall within the general rule protecting them from collateral attack.

There was no error in overruling the demurrers.

*Judgment affirmed. All the Justices concur.*