### 13396. HOLLIDAY, trustee, v. PERSONS et al.

1. Where the subscription agreement to stock in a proposed corporation recites the amount of the capital stock to be subscribed and designates the number of shares and the value thereof, the entire amount of the capital stock must be subscribed, as a condition precedent to the liability of the subscribers signing the agreement. The subscriber's liability being dependent upon the terms of the contract, he may, in a suit against him by a creditor of the corporation after it has become insolvent, defend upon the ground that the minimum capital stock has not been subscribed, where it does not appear that he has committed any act that would estop him from setting up this defense against the creditor.

2. A part payment by a subscriber on his subscription to the capital stock before the corporation organized and commenced doing business will not, without more, amount to a waiver of his right to rely upon the terms of the contract as a condition precedent to his liability. .

3. *Chappell* v. *Lowe*, 145 *Ga.* 717 (89 S. E. 777), and *Lowe* v. *Byrd*, 148 *Ga.* 388 (96 S. E. 1001), distinguished.

DECIDED MARCH 1, 1923.

Complaint; from Bibb superior court — Judge M. D. Jones. February 6, 1922.

Application for certiorari was granted by the Supreme Court.

P. O. Holliday, as trustee in bankruptcy of the Southern Druggists Syndicate, instituted suit against Ben S. Persons, E. G. Jacobs, George D. Case, and J. A. Baugh, to recover certain amounts alleged to be due the corporation by the defendants on unpaid subscriptions to stock in the corporation. The allegations in the petition, so far as material to the matter under consideration, are that the entire assets of the corporation consisted of these alleged unpaid stock subscriptions and certain other unpaid stock subscriptions, all of which assets were insufficient to pay the indebtedness due by the corporation to its creditors represented by the trustee in bankruptcy having authority to collect the assets of the corporation and distribute them among its creditors; that the alleged indebtedness of the defendants was evidenced by a written subscription signed by them, which contained a recital that the amount of the capital stock was $100,000, divided into shares of $10 each, and indicated the number of shares subscribed for by each defendant, with the amount of the indebtedness therefor; that after a charter was granted to the corporation the incorporators held a meeting, and the subscriptions to the capital stock, as set out in the written subscription evidencing the defendants' subscriptions, were accepted, a board of directors and

the usual corporate officers elected, and the corporation organized and began business; that while conducting said business it contracted debts, including those listed in the schedule filed in the bankruptcy proceedings against it, and continued to do business as a corporation until it became insolvent and its creditors filed a petition in bankruptcy against it and caused the corporation to be adjudged a bankrupt. Each defendant demurred to the petition upon the grounds that no cause of action was set out, and that it did not appear from the petition that the minimum capital stock had been subscribed, or that the corporation had been legally organized. The court sustained the general demurrers, and, without passing upon certain special demurrers which have not been referred to, dismissed the petition. To this order dismissing the petition the plaintiff excepts.

*Harris, Harris & Witman, Jones, Park & Johnston, Strozier, Moore & Deaver,* for plaintiff.

*Ryals & Anderson,* for defendants.

STEPHENS, J. (After stating the foregoing facts.)

1. In a contract of subscription to stock in a proposed corporation it is implied that all the capital stock shall be subscribed, as a condition precedent to the subscriber's liability for payment of the amount of his subscription. Particularly is this true where the total amount of the capital stock and the number of shares are stated in the subscription agreement, as in the case under consideration. 1 Cook on Corporations (7th ed.), § 176; 1 Thompson on Corporations (2d ed.), § 529; *Memphis Branch R. Co.* v. *Sullivan,* 57 *Ga.* 240; *Hendrix* v. *Academy of Music,* 73 *Ga.* 437 (3). Therefore, in the absence of any estoppel against the defendants or any waiver by them of the non-performance of this condition precedent to their liability, there is no liability against them for their unpaid subscriptions to the capital stock, where the total capital stock has not been fully subscribed. This is true even against creditors of a bankrupt corporation, who are a favored class and against whom a stock subscriber is estopped from setting up certain defenses against the payment of his stock subscription, which he could set up against the corporation, unless it can be shown that the stock subscriber has by his conduct become estopped from setting up his right under the contract as against the creditor. The defendants are entitled, even as against creditors, to stand on the terms of their

contract and can avail themselves of the non-performance of any condition precedent to their liability, unless by their acts and conduct towards the corporation or the creditors they have become estopped from relying upon the defense which the contract gives them.   In a suit by the trustee in bankruptcy, in behalf of the creditors, which discloses the contract providing a condition precedent to the defendants' liability and fails to allege the performance of this condition, no cause of action is set out where the petition fails to disclose facts which would operate as an estoppel against the creditors.   There being no such facts disclosed in the petition, no cause of action in the trustee is alleged.   Stearns *v.* Sopris, 4 Colo. App. 191 (35 Pac. 281); Hollander *v.* Heaslip, 137 C. C. A. 1 (222 Fed. 808); Exposition Ry. &c. Co. *v.* Canal St. &c. Ry. Co., 42 La. Ann. 370 (7 So. 627); Birge *v.* Browning, 11 Wash. 249 (39 Pac. 643); Heiskell *v.* Morris, 135 Tenn. 238 (186 S. W. 99, Ann. Cas. 1918B, 1134); Converse *v.* Gardner Co., 174 Fed. 30 (98 C. C. A. 16).

The allegation in the petition that the " incorporators " held a meeting and accepted the defendants' subscriptions to the capital stock, organized the corporation, and began business, can avail the plaintiff nothing by way of an allegation that the defendants took any part in this meeting or in the organization of the corporation. The subscribers to the capital stock are not necessarily the incorporators.   The incorporators are the persons obtaining the charter.   See 2 Words & Phrases, 1623.   Construing the petition most strongly against the pleader, as we must, it does not appear that the act of the incorporators in organizing the corporation was the act of the defendants, who, it appears, were only subscribers to the stock.

Whatever right, if any, the creditors may have had to presume that after the organization of the corporation the minimum capital stock had been subscribed and the liability of the subscribers had thereby become complete, this presumption can not avail against a subscriber who relies upon the terms of his contract, and has not done anything that would estop him from setting up his legal defense thereunder.   The creditors are protected under the Civil Code (1910), § 2220, which provides as follows: " Persons who organize a company and transact business in its name before the

minimum capital stock has been subscribed for are liable to creditors to make good the minimum capital stock with interest."

2. It appears from the petition that two of the defendants, at some indefinite time, made partial payments to the corporation upon their stock subscriptions. This, it is contended by the plaintiff, amounted to a waiver by the defendants of any right to insist upon a subscription of the minimum capital stock as a condition precedent to their liability. Since it does not appear when the payments were made, this can avail the plaintiff nothing. The payments, so far as it appears from the petition, may have been made at the time the subscription agreement was entered into, and therefore, not being an act subsequent to the accrual of the rights under the agreement, can not amount either to a waiver by the subscriber of the performance of the condition precedent to his liability or to an estoppel against the assertion of his rights under the contract. It certainly does not appear that the payments were made after the corporation was organized and had begun to transact business. If not so made, the act of payment certainly was not such an act respecting the operating of the corporation as would amount to a waiver or estoppel beneficial to creditors. See, in this connection, Birge v. Browning, supra.

3. The cases of *Chappell* v. *Lowe*, 145 *Ga.* 717, and *Lowe* v. *Byrd*, 148 *Ga.* 388 (supra), are distinguishable from this case. In the first case the stock subscription sued on was entered after the corporation had organized and had begun doing business. The second case was a suit against the subscribers to stock in a corporation, instituted by a trustee in bankruptcy in behalf of creditors of the corporation, some of whom were directors of the corporation. A judgment was rendered in favor of the defendant subscribers, upon the ground that the creditors, being directors, could not recover, and that, as there were sufficient funds to pay the other creditors, it was therefore unnecessary to go upon the defendants. The case as reported is where the directors excepted to this judgment. The Supreme Court, in affirming the judgment, held that the directors of the corporation, being, on account of their relationship to the corporation, charged with notice of the corporation's affairs, could not recover unpaid subscriptions where the minimum capital stock had not been subscribed. No question as to the liability of the stockholders was there involved.

*Judgment affirmed. Bell, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting. While there appears to be a diversity of rulings in other jurisdictions as to whether or not creditors of insolvent corporations can enforce the payment of unpaid subscriptions to the capital stock where the minimum capital stock has not been subscribed, in my opinion the rule in this State has been definitely fixed and determined by the Supreme Court in two of the cases which have been referred to in the majority opinion, to wit: *Chappell* v. *Lowe,* 145 *Ga.* 717, and *Lowe* v. *Byrd,* 148 *Ga.* 388. The ruling in the *Chappell* case seems to have been unequivocal, and does not appear to have been based upon the theory that the subscription then dealt with was made after the corporation had been organized, but the ruling appears to rest upon the doctrine, expressed in the opinion (p. 720), that " Creditors dealing with the corporation had a right to presume that the requisite amount of stock had been subscribed. The fact alone of the commencement of business created that presumption." In the *Lowe* case the court said: " A subscriber to the capital stock of a corporation chartered by the superior court under section 2823 of the Civil Code may defend against a suit by the corporation upon his subscription contract, by showing that the minimum amount of capital stock specified in the charter had not been subscribed. [Citing cases.] When, however, the incorporators have organized and commenced business before the requisite amount of capital stock has been subscribed, and third persons have extended credit on the faith of the corporation being legally organized, and, the company becoming insolvent, suit is instituted in behalf of such creditors against subscribers to stock upon unpaid stock subscriptions to compel contribution for payment of such creditors, under application of the doctrine of estoppel the defense above mentioned is not available. [Citing cases.] But if at the time credit is extended the creditor knows the fact upon which the defense is predicated, namely, that the requisite amount of capital stock had not been subscribed, he can not be said to have been misled, and relatively to him there would be no basis for the estoppel against the subscriber to stock." Thus, a creditor in dealing with an active corporation is protected by the legal presumption that all of its stock has been subscribed, and it is only when he has knowledge to the contrary that he is deprived of the status of having extended credit on the faith of the corporation having been legally

organized. That creditors constitute a favored class in enforcing the payments of unpaid stock subscriptions is recognized in numerous cases holding that as against them the defense that the subscription was obtained by fraud will not avail. A subscriber is not without remedy in order to protect himself against a premature organization of the corporation, since until its organization his subscription amounts to nothing more than an offer to the corporation not yet in existence, and is subject to be revoked. *National Bank of Union Point* v. *Amoss,* 144 *Ga.* 425 (4), 433 (87 S. E. 406, Ann. Cas. 1918A, 74). It would seem that except as to intervening rights of bona fide creditors, such privilege would continue to exist until an organization which was legal had been effected. If an accepted subscriber does not wish to withdraw, he can still invoke the aid of the courts in preventing the de. facto corporation from subjecting him to unauthorized risks. But where he does not withdraw, and fails to interpose any legal objection to the premature activities of the corporation, but takes his chances of gaining a profit of which he could not be deprived, if the business proves unprofitable and the corporation becomes insolvent, he cannot be heard to dispute his subscription with creditors who in good faith dealt with the corporation on the legal presumption that it had been legally organized and that all the stock had been subscribed. "If the subscriber had paid his stock subscription, he would not have been entitled to have it paid back, to the loss of creditors who dealt with the corporation on the faith that it was legally organized. There is no material difference between the actual payment of the stock subscription and the stockholder's liability therefor, relatively to creditors of the corporation." *Chappell* v. *Lowe,* supra (145 *Ga.* 720).