JOHN T. TEMPLE *et al.*

*v.*

JOHN R. LEMON.

*Filed at Ottawa November 17, 1884.*

1. STOCKHOLDERS—*condition to their liability—necessity of the entire capital stock being subscribed.* There is no liability on a subscription to the stock of a corporation, the amount of whose capital stock is fixed, until the whole amount of the stock is subscribed.

2. A subscriber to the capital stock of a proposed corporation, when the full amount of stock fixed by law or by the action of those connected therewith is not subscribed, can not be held liable individually for a debt of such corporation, unless for some cause he has estopped himself from alleging that the whole of the fixed capital stock was never subscribed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. JOHN S. MILLER, for the appellants.

Mr. F. W. S. BRAWLEY, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is a creditor's bill, brought on August 26, 1880, by Lemon, in the Superior Court of Cook county, against the Industrial Life Association, located in the city of Chicago, and John Temple, John H. S. Quick, and others. The complainant shows that he recovered a judgment against that corporation at the January term, 1877, for $1872.24, and that an execution upon that judgment was issued January 6, 1877, which, on April 6, 1877, was duly returned *nulla bona.* Complainant seeks a decree against Temple and others, upon the allegation that they are, respectively, indebted to the corporation upon their several subscriptions to its capital stock. They, respectively, deny the allegation as to their indebtedness. Issues were formed by answers and replications, and proofs taken. The cause was heard upon the pleadings and proofs, and a decree rendered July 16, 1883, finding that the judgment was obtained, and execution issued and returned, as alleged in the bill; that there is now due to Lemon from the association, $2613.15; that before the judgment, Temple had subscribed for one hundred shares of the stock, at $100 a share, and by reason of the same remaining unpaid, is now indebted to the corporation in a sum greater than the amount due on the judgment; that before judgment, Quick had subscribed for fifty like shares, and by reason of non-payment thereof is also indebted to the corporation in a sum larger than what is due upon the judgment; and decreeing that the defendant corporation, and Temple and Quick, pay to complainant the amount so found due to him from the corporation, with interest from the date of the decree, and also his costs. From this decree Temple and Quick each appealed to the Appellate Court, where the decree was affirmed, and they bring the cause here by appeal.

The proof shows that on February 16, 1865, an act was approved declaring Abel P. Buckley, and others named, and

their associates, successors and assigns, a body corporate, under the name of "the National Insurance Company of Illinois," with full power to transact an accident and life insurance business, and a general insurance business; to establish agencies in or out of this State; to make by-laws for the management of its affairs, with a provision that the act shall be void unless the directors organize the company at Morris, in the county of Grundy, within one year from the passage of the act. The charter gives no directions as to the mode of organization, or what shall constitute an organization,—in fact does not require, except by implication, that there shall be directors, makes no express provisions for issuing any stock or receiving subscriptions to the stock, and says nothing about the amount of stock. Power is given "to make insurance and take risks, * * * and charge and receive * * * premiums therefor, * * * *either upon the mutual or stock principle, or both.*" This charter declares the corporation subject to the "operation of such general laws as may hereafter be passed upon the subject of insurance companies." The proof also tends to show that an organization of some kind was effected at Morris within the year, sufficient to keep alive the charter; but it is not shown that any stock was subscribed within the year, or that any thing was done more than the election of officers by the corporators named in the act. The proof further shows meetings of the corporators from time to time, and successive elections of officers, until March 3, 1873, when, at a meeting held at Morris, the name of the corporation was changed to that of the Prudential Life Association, and its place of business was changed to Chicago. The subscriptions to stock made by Temple and by Quick, respectively, were made after this change of name and location of the company, and on their face are payable to the "Prudential Life Association of Chicago." The proof further shows that the capital stock was fixed at $100,000, and had this not been shown, the gen-

eral act of 1869, in relation to insurance companies, (to which
this corporation, by its charter, was made subject,) required a
capital of at least $100,000 to be subscribed before any legal
organization for business could be accomplished.   The proof
further shows that prior to the time of the hearing in this
cause not more than about $40,000 had ever been subscribed.

In this state of affairs it can not be held that appellants
are indebted on their subscriptions.   The bill states that they
are "indebted to," and "that there is money due from them
to the Prudential Life Association, according to the tenor and
effect of a certain subscription to the capital stock of said
Prudential Life Association."   There is no liability on a sub-
scription to the stock of a corporation, the amount of whose
capital stock is fixed, until the whole amount of the stock is
subscribed.   *Stoneham Railroad Co.* v. *Gould,* 2 Gray, 277;
*Proprietors Newburyport Bridge* v. *Storey,* 6 Pick. 45, note;
*Burt* v. *Farrer,* 24 Barb. 518; *New Hampshire Central Rail-
road Co.* v. *Johnson,* 3 N. H. 390; *Allman* v. *Havana, Rantoul
and Eastern Railroad Co.* 88 Ill. 521.

In the last named case, Mr. Justice BREESE, speaking for
this court, says: "The question is, and it is the important
question in the case, was it in the power of these directors
to make this call, the full amount of the capital stock not
having been subscribed?   This question is to be decided
by authority.   On reference to a leading work on railways,
(1 Redfield on the Law of Railroads, 176,) we find it is there
said that it is an essential condition to making calls in these
companies, when the number of shares and the amount of
capital is fixed, that the whole stock shall be subscribed
before any call can lawfully be made.   Reference is made in
support of the text to *Stoneham Branch Railroad Co.* v. *Gould,*
2 Gray, 277, in which Ch. J. SHAW uses this emphatic lan-
guage: 'It is a rule of law too well settled to be now ques-
tioned, that when the capital stock and number of shares are
fixed by the act of incorporation, (in this case by the articles

filed and recorded,) or by any vote or by-law passed conform-
edly to the act of incorporation, no assessment can lawfully
be made on the share of any subscriber until the whole
number of shares has been taken. This was held in *Salem
Mill Dam* v. *Roper,* 6 Pick. 23, and 9 Pick. 187; *Cabut and
West Springfield Bridge* v. *Chapin,* 6 Cush. 50; *Worcester
and Nashua Railroad Co.* v. *Hinds,* 9 Cush. 110.' * * *
By the articles of incorporation filed and recorded, a corpo-
ration was created as efficient for all the contemplated pur-
poses as if its power had been conferred by a special charter.
The capital stock was fixed definitely at $1,000,000, to be
divided into 10,000 shares, of $100 each, and that amount
must have been subscribed *before the corporation could have a
legal existence. It was a condition precedent to the legal exist-
ence of the company.* There is nothing in the 'articles' or in
the statute which authorizes the corporation to commence
operations when a less amount is subscribed." See, also,
*Somerset and Kennebec Railroad Co.* v. *Cushing,* 45 Maine, 124.

If this be the law, it follows that this association could
not have maintained any action against appellants upon this
subscription, and consequently the complainant's bill will not
lie to enforce payment of such subscriptions, unless for some
cause appellants are precluded from alleging that the whole
of the fixed capital was never subscribed. We find nothing
in the bill setting up any cause or ground of estoppel in this
regard, and certainly nothing in the proofs. The appellee
testifies that the claim on which his judgment against the
corporation is founded, was for services as secretary of this
corporation, and for money lent and advanced when he was
made secretary, and that before accepting that office and
before advancing that money he had inquired into the state
of this company, and had ascertained that not more than
some $37,500 had ever been subscribed to the stock of this
corporation, and that he knew the officers of the company
made him secretary, at a salary of $3000 a year, chiefly for

the purpose, through his efforts, of getting the balance of the $100,000 of stock subscribed, and that no more stock was subscribed. He was bound to know the law, and thus knowing the facts he knew that appellants were not liable on their subscriptions, and never would be, unless all the balance of the stock was subscribed. Under these facts he can, as a judgment creditor, have no better position against appellants than that of the corporation itself in an action by it upon their subscriptions. Clearly, no action by the corporation could be sustained unless the whole of the stock necessary to complete the organization were subscribed.

The judgment of the Appellate Court affirming this decree we think was erroneous. The proofs tend strongly to show that appellee was a subscriber to the stock, and as completely one of the promoters of this corporation as was either of the appellants, and that the money he advanced and the services he rendered were advanced and rendered as a promoter. If he were not one of the promoters, and simply served the promoters and advanced money to their use under a contract in form with this inchoate corporation, it may be this would give him a right of action for his demand, against the promoters, as partners; and if a promoter himself, it may be he had equities against his fellows for contribution which might be considered on a bill, wherein the advances of each of the others might be brought in and the accounts adjusted. It may be that on a bill for contribution, against appellants and the other subscribers and promoters, he could, and might have a right to, show that equitably he should receive money from them. These questions are not submitted for decision here. No relief of that kind is sought in this case.

The judgment of the Appellate Court is reversed, and the cause remanded, that the decree of the Superior Court may be reversed and the cause remanded, that further proceedings may be had, if necessary, not incompatible with the views herein expressed.

*Judgment reversed.*