Stearns et al., Appellants, v. Sopris, Appellee.

1. Corporations—Subscriptions to Stock.

A subscription to the stock of a corporation not yet organized is subject to the conditions expressed in the contract and to the implied condition that all of the stock shall be subscribed before any particular subscription becomes operative whenever the total amount of stock and the number of shares are stated in the contract.

2. Same.

Unless there is some clear provision in the contract which will except it from the operation of the general doctrine, the whole amount of the capital stock provided for must be secured by *bona fide* subscription enforceable against the individual subscribers.

3. Waiver.

A person subscribing to the stock of a corporation may waive his right

to insist upon the performance of the conditions expressed or implied in the subscription contract. It seems, however, that a waiver cannot be predicated upon what is done by a party at a time antedating the actual organization of the corporation.

*Appeal from the District Court of Pueblo County.*

THIS controversy grows out of an attempt by a creditor of the Trinidad Rolling Mills and Iron Company to collect his debt by proceeding against a subscriber to the stock of the company to compel him to pay his subscription.

Early in 1888, divers people devised the scheme of raising a company to build and operate a rolling mill near the city of Trinidad, in Colorado. The promoters did not subscribe for any very large proportion of the stock, but it was evidently their plan to obtain subscriptions from the citizens of that city sufficient to insure the success of the enterprise on the basis of the public benefits which would result from the establishment of that manufactory. A subscription paper was prepared and circulated. It is as follows :—

" Whereas, the undersigned citizens of Trinidad are desirous of organizing a corporation to be known as ' The Trinidad Rolling Mills and Iron Company,' for the purpose of building a rolling mill in or near the city of Trinidad, and

" Whereas, it has been decided to organize said corporation with a capital stock of $200,000,

" Wherefore, it is agreed by us, the undersigned subscribers, to take stock in said Trinidad Rolling Mill and Iron Company, in the sums set opposite our names, and to pay twenty-five per cent of our subscription on or before the 10th day of April, A. D. 1888, and the remainder in three equal installments, payable respectively, on the 10th day of June, 1888, the 10th day of August, 1888, and the 10th day of October, 1888." * * *

The paper was circulated and subscriptions secured amounting to a little upward of $60,000. Without waiting to obtain subscriptions for the entire capital, or failing in the attempt, which is not settled by the record, the promoters

on the 10th of April, 1888, held a meeting to organize the company. The articles of corporation would seem to have been then executed by some of the parties interested, and presumably filed for record according to the statute. Some of the interested parties who were present at the meeting participated in the proceedings, signed the stock book, in furtherance of their subscriptions, named the persons who were to be directors for the first year, and in general did what was necessary to perfect a corporate organization. There is considerable dispute in the record as to the part which the garnishee, Sopris, took at this meeting. Some witnesses say that he was present and took part in the meeting to the extent of voting for the people who were to serve as directors the first year. This he denies, and states that he declined to vote and did not sign the stock subscription book. The latter fact is conceded. He seems, however, to have done nothing further with reference to the matter, took no further interest in the enterprise, declined to pay the sum that was due on the 10th of April and paid nothing afterwards. After the company was organized as stated, it proceeded to do business, erected the mills, so far as might be with the capital at their command, and attempted to carry out the purposes of their organization. The company subsequently mortgaged its property to secure some debt which was not paid at maturity, and the mortgagee closed out the concern. The present plaintiffs in error had sold the company some machinery for which they had not been paid. They obtained judgment against the corporation, their execution was returned unsatisfied, and thereupon they issued a process of garnishment, and had it served on sundry of the subscribers, among whom was the defendant in error, Sopris, and by these means sought to compel payment of the unpaid subscriptions. It is conceded that Sopris signed the above subscription list, and placed the sum of one thousand dollars opposite his name. In answering the process, Sopris denied that he was indebted to the company by the general statement of "No" in response to the question, and the garnishing creditors took issue, set

up the major portion of the foregoing facts, and the case came to trial thereon. At the trial, the facts were all proven by an agreed statement which contained substantially the foregoing narration. Judgment passed in favor of the garnishee, and Stearns, Roger & Company prosecuted the appeal.

Messrs. HARTMAN & GLENN, for appellants.

Mr. BO SWEENEY and Mr. JOHN A. GORDON, for appellee.

BISSELL, P. J., delivered the opinion of the court.

The most troublesome of the many questions which this record presents will be left unsolved, for the decision can be safely rested on the application of a well established principle. To prevent any possible misconstruction, and to rebut any possible inference on this matter, the court desires expressly to state that it has not considered, and does not determine, the sufficiency and legality of the present proceedings to enforce the supposed ·liability of a stockholder upon his unpaid subscription. As is well understood by the profession, the remedy in these cases has been a matter of much discussion among the courts. The law on this subject is in a very unsettled condition, and it cannot be said to be at present clear, where no statute regulates the remedy, whether the proceedings should be at law or in equity, nor by whom the suit should be brought, nor whether one or all of the subscribers should be before the court. But since we conclude that in no event could Sopris be held liable, it is better to rest the opinion upon that irrefragable basis than to enter this disputed territory, and attempt by reason and on precedent to settle it.

As a general proposition, it may be safely stated that every subscription to the stock of a corporation not yet organized is subject to whatever expressed conditions may be contained in the contract, and to the implied condition that all of the stock shall be subscribed before any particular subscription

becomes operative, wherever the total amount of stock and the number of shares are stated in the subscription contract. The whole amount of the capital stock provided for must be secured by a *bona fide* subscription enforceable as against the individual subscribers, unless there is some clear provision in the contract which will except it from the operation of this general doctrine. The basis of this implied condition has been variously stated, but never more strongly or more satisfactorily than in the mill case below cited. In that case the chief justice said : " This question goes deep into the interests of those who embark in projects of improvement with the right to calculate upon a certain capital, and on their own liability to contribute towards raising it. If with the expectation of five hundred associates, or shares in that proportion, those who represent two hundred can assemble, and agree to carry on the whole work, by a major vote of that number, and assess themselves and the rest, and these doings are binding on the minority, the effect will be to discourage such enterprises, and subscriptions to objects, which from their nature must be of doubtful success, will cease. A man may be willing, from public motives alone, to take his chance upon a limited proportion of five thousand shares of a capital stock, and altogether unwilling to adventure upon half that number; and if he secure himself by the terms of his subscription, he cannot be bound beyond it by a major vote of those who may choose to persist in the adventure under discouraging circumstances." This argument, that all subscriptions are on the implied understanding, which is both just and reasonable, that the subscriber is to be aided by the other subscriptions to the full extent of the capital stock, underlies all the decisions. The subject has undergone exhaustive discussion in many cases, and the various reasons which have been assigned in support of the doctrine need not be stated. This doctrine commends itself to the common judgment of people who are engaged in such enterprises, and is adequately supported by what has already been suggested. The authorities supporting it are both numerous and conclusive. *Salem Mill*

*Dam Corporation v. Ropes*, 6 Pick. 23 ; *The P. & R. I. R. R.
Co. v. Preston*, 35 Iowa, 115 ; *Bray v. Farwell*, 31 N. Y. 600 ;
*Temple v. Lemon*, 112 Ill. 51 ; *Steamboat Co. v. Sewall*, 80
Me. 400 ; *Ridgefield & N. Y. R. R. Co. v. Reynolds*, 46 Conn.
375 ; *Livesey v. Omaha Hotel*, 5 Neb. 50 ; Cook, Stock &
Stockholders, § 176, *et seq.*

It must be conceded that some exceptions have been en-
grafted upon the rule.  These exceptions, however, always
rest upon the terms of the contract to which the subscriber
has affixed his name ; as in the case of *Railroad Co. v. Kins-
man*, 77 Me. 370, where there was an express promise to pay
to which no condition was affixed, and the contract itself
contained no statement of the number of shares or the amount
of the capital from which the implied condition could be de-
rived.  It will be found that wherever there has been a de-
parture from this well settled rule, the reason therefor is to
be easily deduced from the terms of the contract into which
the subscriber has entered.  Wherever, as in this case, there
is no express promise to pay which is separable from the con-
tract as an entirety, and the paper states the amount of the
capital stock and the number of shares into which it is to be
divided, the plaintiff before he can recover must prove a
*bona fide* subscription to the total amount of the capital
named in the agreement.  Like all conditions contained in
contracts between parties, it, of course, may be the subject
of a waiver.  A party may expressly agree not to take ad-
vantage of what he may have the legal right to assert, or he
may do those things by which he will be estopped to insist
on the condition, and in either event be legitimately adjudged
to have waived it.  No proof was made in this case render-
ing this principle applicable.  No express waiver was proven,
nor can one be implied from what Sopris did in the meeting
whereat the company was organized.  He did not subscribe
to the stock at that meeting as did the others, nor was his
action of that description essential to create an estoppel.  It
is doubtful if he participated in the organization, voted for
the election of the directors, or did anything which would

indicate a purpose on his part to assent to the carrying on of the enterprise otherwise than according to the terms of the original agreement. It has been held in *Curry Hotel Co. v. Mullins*, 53 N. W. Rep. 360, that a waiver cannot be predicated upon what is done by a party at a time antedating the actual organization of the corporation. This principle need not be invoked to relieve the defendant Sopris. What the plaintiffs proved would not be sufficient to warrant the application of the principle of waiver.

The conclusion and judgment of the trial court that Sopris was not liable accord with the law, and they will accordingly be affirmed.

*Affirmed.*